HASSARD BONNINGTON LLP
THOMAS M. FRIEDER, ESQ., State Bar No. 95411
Two Embarcadero Center, Suite 1800
San Francisco, California 94111-3941
Telephone: (415) 288-9800
Fax: (415) 288-9801
Email: tmf@hassard.com

Attorneys for Defendants
DAVOL INC. and C.R. BARD, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON, and BYRON RALSTON<br><br>Plaintiffs,<br><br>v.<br><br>DAVOL INC.; C.R. BARD, INC.; LODI MEMORIAL HOSPITAL, NAGUI SOROUR, M.D., and DOES 1 through 20,<br><br>Defendants. | Case No.<br><br>DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S NOTICE OF REMOVAL |

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Davol Inc. ("Davol") and Defendant C.R. Bard, Inc. ("Bard"), (collectively "Defendants"), hereby remove the above-captioned action from the Superior Court of California in and for San Joaquin County, California, to this Court. In support of removal, Defendants state as follows:

**I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.**

1. Plaintiffs' Complaint makes similar allegations to numerous other product liability complaints filed against Davol and Bard throughout the country. Plaintiffs

allege that the Composix® Kugel® Hernia Patch, an FDA-approved medical device distributed and sold by Davol for use in the repair of soft tissue defects, including ventral or incisional hernias, was defective and unreasonably dangerous when put to its intended use. These matters have been consolidated for pretrial proceedings. *See In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007). With Defendants' removal, the present action can and should become part of those MDL proceedings in due course.

2. Plaintiffs filed their Complaint in the Superior Court of California in and for San Joaquin County, California on or about June 8, 2008. Bard was served with the Complaint on June 17, 2008. Davol has not yet been served but expressly joins this Notice of Removal.

3. As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Davol and Bard (including Plaintiffs' Complaint) is attached as Exhibit A.

4. This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Superior Court of California in and for San Joaquin County, California, where Plaintiffs' Complaint is pending. *See* 28 U.S.C. § 84(b).

5. This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days after the first receipt by Davol or Bard, through service, of Plaintiffs' Complaint, which sets forth the bases for removal.

6. Pursuant to 28 U.S.C. § 1446(d), Davol and Bard are filing a written notice of this removal with the clerk of the Superior Court of California in and for San Joaquin County, California, where Plaintiffs' Complaint is pending. Copies of this Notice of Removal and the written notice of same that are being provided to the state court are also being served upon Plaintiffs' counsel in accordance with 28 U.S.C. § 1446(d).

/ / /

## II. THIS COURT HAS DIVERSITY JURISDICTION

7. As will be shown more fully below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiffs and Davol and Bard, the only properly joined defendants. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

### A. The Amount-In-Controversy Requirement Is Satisfied

8. Davol and Bard deny Plaintiffs' claims, but based on Plaintiffs' own allegations seek an unlimited amount of damages in excess of $25,000. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (in analogous cases, the amount-in-controversy threshold was met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000."). Further, based on the quality of plaintiffs' allegation it is clear more than $75,000 is in controversy and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiffs' claims sound in product liability and seek recovery for personal injuries allegedly caused by a defective medical device, the Composix® Kugel® hernia repair patch, that was designed and sold by Davol and used in conjunction with Plaintiffs' decedent's hernia repair. (*See* Attachment to Compl. ¶ Prod. L-1.) Plaintiffs allege that due to its allegedly defective design, the Composix® Kugel® hernia patch failed, and Plaintiffs' decedent Adela Joralmon eventually died . (*Id.* at ¶ GN-1 (d).) Plaintiffs also seek damages for "[f]uneral and burial expenses, the loss of love, companionship, comfort, care, assistance, protection, affection, society and financial and moral support of a mother." (See Compl. ¶ 11(g).) Plaintiffs now seek "an unlimited" amount in compensatory damages and other expenses exceeding $25,000. (*See* Compl. ¶ 14; *see also* Plaintiffs' Civil Case Cover Sheet.)

9. A defendant can establish the amount in controversy by the allegations in a complaint or by setting forth facts in the notice of removal that demonstrate that the

amount in controversy exceeds $75,000. Here, the amount-in-controversy requirement is easily met, because the types of injuries alleged in Plaintiffs' Complaint make it "facially apparent that the claims are likely above" the requisite amount-in-controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)); *see also Campbell v. Bridgstone/Firestone, Inc*., 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006); *In re Rezulin Prods.Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy to be satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions); *In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563, 646 (S.D. Tex. 2005) (same); *Quinn v. Kimble*, 228 F. Supp. 2d 1038 (E.D. Mo. 2002) (same).

10. In fact, other plaintiffs have brought other actions against Davol and Bard making similar allegations as the ones expressed here pleading an amount-in-controversy in excess of $75,000. *See, e.g., Poston v. Davol Inc., et al.*, No. 2:07-cv-00032 (E.D. Cal.) (alleging damages "in the amount of $1,000,000,000"; plaintiff subsequently indicated there had been a clerical error, and the intended allegation was $1,000,000) (Ex. B); *Risley v. Davol Inc., et al.*, No. 07-cv-0806 (S.D. Cal.) (alleging damages in excess of requisite amount required by 28 U.S.C. § 1332) (Ex. C). *Cf. In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 295-96 (looking to other suits involving the same product to resolve amount-in-controversy inquiry).

**B. The Parties Properly Joined In This Action Are Completely Diverse**

10. Plaintiffs are residents and citizens of California.

11. Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. *See* Aff. of Mark Lederer (Ex. D). Accordingly, Davol is a citizen of those two states, and not California. *See* 28 U.S.C. § 1332(c)(1).

12. Bard is, and has been at all relevant times, a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. *See* Aff. of

Mark Lederer (Ex. D). Accordingly, Bard is a citizen of New Jersey, and not California. *See* 28 U.S.C. § 1332(c)(1).

13. The naming of fictitious defendants, namely Does 1 through 20, is disregarded in making determinations regarding removal. *See* 28 U.S.C. § 1441(a).

**C. The Remaining Defendants: Nagui Sorour, M.D.'s and Lodi Memorial Hospital's Consent To This Removal Is Not Needed.**

14. As set forth more fully below, Dr. Nagui Sorour and Lodi Memorial Hospital (collectively "Healthcare Defendants") are not proper parties to this suit, and therefore their consent to this removal is unnecessary. *See United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002)); *see also Emrich v. Touche Ross & C*o., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

**D. Healthcare Defendants Are Procedurally Misjoined, And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis**

15. The doctrine of misjoinder, applied through Rules 20 and 21 of the Federal Rules of Civil Procedure, permits the Court "to sever claims where the [plaintiff's] joinder [of parties and claims] is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by severance." *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[W]here the non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, other interests prevail over that of permitting a plaintiff's choice of forum." *Id.*

16. The Healthcare Defendants are misjoined as parties here, and should be severed from this action to sustain this Court's diversity jurisdiction, because Plaintiffs' claims against them do not arise from the same transaction or occurrence as Plaintiffs' claims against Davol and Bard. In a case factually indistinguishable from the current matter, the Honorable Oliver Wanger severed and remanded medical negligence claims against non-diverse healthcare providers and retained jurisdiction

over Davol and Bard. *See Sutton v. Davol, Inc. et al.*, No. 1:08-cv-00280-OWW-GSA (E.D. Cal.) (holding "Plaintiffs' claims based on strict products liability against [medical device company] are separate from Plaintiffs' claims of medical negligence against California [healthcare] Defendants in implanting a previously recalled patch in [plaintiff]" in denying motion to remand) (Ex. E). His reasoning is well-supported by other courts that have addressed this issue. *In Re Guidant Defibrillators Product Liability Litigation,* Case No. 0:05-md-01708 (D. Minn. August 30, 2007) (denying plaintiff's motion to remand case back to Superior Court of Santa Clara County, California and severing the claim against physician from claims against medical device manufacturer) (Ex.F); *see also Crockett v. R.J. Reyonlds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (severing medical malpractice claim against health care provider defendants from product liability claims against product manufacturer); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) (finding, *inter alia*, that plaintiff's "additional claims against the health care provider for negligent administration of [the drug] after its withdrawal from the market do not arise out of the same transaction or occurrence as the claims against the drug manufacturer for negligent marketing and distribution and failure to warn").

17. Here, the allegations included in the Complaint against Defendants Bard and Davol are legally and factually distinct from the allegations against the Healthcare Defendants. The claims against Davol and Bard involve product-liability-related legal theories whereas the claims asserted by Plaintiff against the Healthcare Defendants involve a <u>medical</u> malpractice claim. (*See* Compl.) The essence of the claims against Davol and Bard arise from the design, testing, and manufacture of the Composix® Kugel® Patch before it was implanted in Plaintiffs' decedent. In contrast, the basis for the claims against the Healthcare Defendants arises from their negligent failure as health care providers to properly and adequately administer medical treatment. The evidence on the claims against the manufacturers and health care providers will be separate – manufacturer-specific evidence involving the design, testing, and

manufacture of the Patch on one hand and health care provider-specific evidence regarding Plaintiffs' decedent's treatment and health care providers' rendering of medical services and advice and performing surgery. *See Crockett*, 436 F.3d at 533. This fact encourages the severance of the claims.

18. Because Plaintiffs' claims against the Healthcare Defendants are separate, distinct, and severable from the claims against Bard and Davol, this Court has the discretion to grant remand with regard to the Healthcare Defendants, but to retain jurisdiction over the claims against Bard and Davol.

19. The presence of Bard or Davol is not necessary in order for Plaintiffs to effectively try their case in any potential lawsuit against the Healthcare Defendants. As such, the claims presented against the non-diverse Healthcare Defendants and Bard and Davol are improperly misjoined.

**E. Healthcare Defendants Are Fraudulently Joined, And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis**

20. A defendant may prove fraudulent joinder by showing that a plaintiff fails to state a cause of action against the non-diverse defendant and that "the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The removing defendant may present facts – including documentary evidence and affidavits – to support a claim of fraudulent joinder. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

21. Assuming the Healthcare Defendants are citizens of California (*see* Attachment to Compl. ¶ GN-1), their presence in this case does not destroy this Court's diversity jurisdiction because they are "fraudulently joined" as putative defendants. The fraudulent joinder doctrine prevents a plaintiff from defeating federal diversity jurisdiction merely by naming nominal, non-diverse defendants. In determining whether a non-diverse defendant has been fraudulently joined, this Court must determine whether the facts and allegations stated in Plaintiff's Complaint provide a basis for recovery against the non-diverse defendant. *See Morris v. Princess Cruise*

*Lines, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001).

22. Here, the allegations set out in Plaintiffs' Complaint provide no basis for recovery against Healthcare Defendants. Plaintiffs claim that Healthcare Defendants, namely Dr. Nagui Sorour, "negligently, carelessly and unskillfully examined, treated, cared for, diagnosed, operated upon, medically treated with medications, attended and otherwise handled and controlled the care of …decedent, thereby proximately causing injury and death…" and that Dr. Nagui Sorour was "negligent and careless in ordering this particular [hernia repair] patch and that [he] lacked the necessary knowledge and skill to properly care for [decedent's] condition and was negligent and unskillful in the diagnosing, surgical management and treatment for [decedent] Adela Joralmon's conditions." *See* Attachment to Compl. ¶ GN-1 (b) and ¶ GN-1 (c). Plaintiffs here provide no facts to support these conclusory allegations. *See Levine v. Citibank*, Civ. 07-2032, 2008 WL 220282 (S.D. Cal., Jan. 4, 2008).

23. Plaintiffs' bald allegations that the Healthcare Defendants committed "medical malpractice" (see Compl. ¶ 10) are insufficient to state a claim. In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court considered a plaintiff's pleading burden and held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. 1955, 1964-65 (2007); *see also id*. at 1965, n.3 ("[FED. R. CIV. P. 8(a)(2)] still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); *see also Levine v. Citibank*, Civ. 07-2032, 2008 WL 220282 (S.D. Cal., Jan. 4, 2008) (citing *Bell Atlantic Corp. v. Twombly*, *supra*). Thus, Plaintiffs' claims against the instate defendants are patently insufficient under any applicable standard because the allegations simply do not "possess enough heft" to "raise [Plaintiff's] right to relief above the speculative level," nor do they "remove the case

from the realm of conjecture and place it within the sphere of legitimate and rational inference." *Twombly*, 127 S. Ct. at 1965-66.

24. Because Plaintiffs' allegations fail to demonstrate a viable cause of action against the Healthcare Defendants, those defendants have been fraudulently joined as defendants in this action, and their citizenship should be "disregarded for purposes of diversity jurisdiction." *Gomes v. Michaels Stores, Inc.*, No. CIV. S-06-1921, 2006 WL 3079024, at *1 (E.D. Cal. Oct. 27, 2006) (finding "bare assertion" of potential liability on the part of non-diverse defendant, "without any specific factual allegations," insufficient to defeat removal on basis of fraudulent joinder); *see also In re Baycol Prods. Litig*., No. 1431, Civ. 03-4954, 2004 WL 1118642, at *2 (D. Minn. May 17, 2004 ("[W]here the Complaint contains no factual allegations specific to any of the Plaintiffs and the medical treatment they received, Plaintiffs have failed to allege a sufficient factual basis for any claims against their physicians. . . . The Court thus finds that the allegations asserted against these Defendants are conclusory at best, and do not defeat a finding of fraudulent joinder."); *In re Rezulin Prod. Liab. Litig*., No. 00cv2843, 2003 WL 43356, at *1 n.2 (S.D.N.Y. Jan. 6, 2003) (finding entirely conclusory allegation of negligence against non-diverse physician-defendant insufficient to state a claim and defeat removal on basis of fraudulent joinder); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 141 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiff failed to provide factual allegations that, if proven, would provide basis for relief against non-diverse defendant); *Waters v. State Farm Mut. Auto. Ins. Co*., 158 F.R.D. 107, 109 (S.D. Tex. 1994) ("Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party."); *Doe v. Cloverleaf Ma*ll, 829 F. Supp. 866, 870 (S.D. Miss. 1993) (denying motion to remand in light of fraudulent joinder of non-diverse defendants, and noting that "[w]here the plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated."). Complete diversity of

citizenship exists between Plaintiff and Bard and Davol, the only parties properly joined as defendants in this action.

25. Plaintiffs have also failed to comply with California's mandatory pre-filing requirements for lawsuits involving health care providers and facilities, such as the Healthcare Defendants. (*See* Code Civ. Proc., § 340.5). The Healthcare Defendants Lodi Memorial Hospital and Dr. Nagui Sorour both fall into the definition of "health care provider" as defined in the California Code of Civil Procedure. (*See* Code Civ. Proc., § 364(f)(1).) According to this section, defendants must be given 90 days notice of intent to commence an action in medical malpractice claims against healthcare providers. *(Id*. at § 364(a) et seq.) These provisions of the California Code of Civil Procedure are applicable in this instant action, and as such, Plaintiffs were required to file a notice stating that they intended to commence an action against Lodi Memorial Hospital and Dr. Nagui Sorour. Plaintiffs have not done so, and therefore are not in compliance with the California Code of Civil Procedure.

26. Plaintiffs' claims against Healthcare Defendants Lodi Memorial Hospital and Dr. Nagui Sorour are further barred by the statute of limitations. California law requires that a wrongful death action against a healthcare provider based on medical negligence "be brought . . . one year after the plaintiff discovers, or through reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Code Civ. Proc. § 340.5; *see Knowles v. Superior Court*, 118 Cal. App. 4th 1290, 1295 (Cal. App. 2004) (holding that wrongful death claims were barred by statute of limitations when plaintiffs discovered claims more than one year before filing suit). Discovery of injury occurred, at the latest, on March 9, 2007 when Plaintiffs' decedent Adela Joralmon died as a result of the Healthcare Defendants' alleged negligence. (*See* Attachment to Compl. ¶¶ GN-1 (b) though (d).) Rather than bringing the lawsuit by March 9, 2008, Plaintiffs waited approximately 15 months to bring a lawsuit against the Healthcare Defendants even though the entire predicate of their claims were known or reasonably discoverable at the time of Plaintiffs' decedent's death. The Plaintiffs' failure to act

within this limitations period prescribed by law forestalls Plaintiffs causes of action.

WHEREFORE, Defendant Davol Inc. and Defendant C.R. Bard, Inc. respectfully remove this action from the Superior Court of California in and for San Joaquin County, California, to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide briefing and oral argument.

Dated: July 10, 2008

Respectfully submitted,

HASSARD BONNINGTON LLP

By /s/ Thomas M. Frieder
Thomas M. Frieder
Attorneys for Defendant DAVOL INC.
and Defendant C. R. BARD, INC

# PROOF OF SERVICE

**Case Name:** **Ralston, et al. v. Davol Inc., et al.**

**Court:** **United States District Court**
**Eastern District of California**
**Sacramento Division**

**Case No.:**

1. At the time of service I was over 18 years of age and not a party to this action.
2. My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111.
3. On **July 10, 2008,** I served the following documents:

**DEFENDANT DAVOL INC.'S AND DEFENDANT C. R. BARD, INC.'S NOTICE OF REMOVAL**

4. I served the documents on the persons below as follows:

VICTOR F. STEFAN, ESQ.
THE BOCCARDO LAW FIRM LLP
111 W. St. John Street, Suite 400
San Jose, CA 95113
408-298-5678 (Phone)
408-298-7503 (Fax)

5. The documents were served by the following means (specify):

____ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening. The time of service was _________.

_X_ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

____ **By overnight delivery**. I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

____ **By messenger service**. I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)

____ **By fax transmission.** I faxed the documents to the persons at the fax numbers listed in item 4. No error was reported by the fax machine that I used.

____ **By e-mail or electronic transmission**. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: **July 10, 2008**

Esther Hom