HASSARD BONNINGTON LLP
THOMAS M. FRIEDER, ESQ., State Bar No. 95411
Two Embarcadero Center, Suite 1800
San Francisco, California 94111-3941
Telephone: (415) 288-9800
Fax: (415) 288-9801
Email: tmf@hassard.com

Attorneys for Defendants
DAVOL INC. and C.R. BARD, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON, and BYRON RALSTON

Plaintiffs,

v.

DAVOL INC., C.R. BARD, INC., LODI MEMORIAL HOSPITAL, NAGUI SOROUR, M.D., and DOES 1 to 20,

Defendants.

Case No. 2:08-at-780

**CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

I, Esther Hom, certify and declare as follows:

I am over the age of 18 years and not a party to this action.

My business address is Hassard Bonnington LLP, Two Embarcadero Center, Suite 1800, San Francisco, California, which is located in the city, county and state where the mailing described below took place.

On July 10, 2008, I deposited in the United States mail at San Francisco, California, in an envelope with postage prepaid, a copy of the *Notice to Adverse Party of Removal to Federal Court* dated July 10, 2008, addressed to:

Victor F. Stefan, Esq.
The Boccardo Law Firm LLP
111 W. St. John Street
Suite 400
San Jose, CA 95113

A copy of the notice is attached to this certificate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 10, 2008.

Esther Hom
Esther Hom

HASSARD BONNINGTON LLP
THOMAS M. FRIEDER, ESQ., State Bar No. 95411
Two Embarcadero Center, Suite 1800
San Francisco, California 94111-3941
Telephone: (415) 288-9800
Fax: (415) 288-9801
Email: tmf@hassard.com

Attorneys for Defendants
DAVOL INC. and C.R. BARD, INC.

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF SAN JOAQUIN

| | |
|---|---|
| LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON, and BYRON RALSTON<br><br>Plaintiffs,<br><br>v.<br><br>DAVOL INC., C.R. BARD, INC., LODI MEMORIAL HOSPITAL, NAGUI SOROUR, M.D., and DOES 1 to 20,<br><br>Defendants. | Case No. 39-2008-00185831-CU-PL-STK<br><br>**NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** |

TO: Victor F. Stefan, Esq.
The Boccardo Law Firm LLP
111 W. St. John Street
Suite 400
San Jose, CA 95113
(408) 298-5678 (Phone)
*Counsel for Plaintiffs*

PLEASE TAKE NOTICE that this action has been removed to the United States District Court for the Eastern District of California, Sacramento Division ("District Court") by the filing of the attached Notice of Removal with the Clerk of the District Court on July 10, 2008. A copy of this notice is on file with the District Court. The Superior Court of California, in and for San Joaquin County may proceed no

further unless or until this case is remanded.

Dated: July 10, 2008

HASSARD BONNINGTON LLP

By_______________________
Thomas M. Frieder
Attorneys for defendants DAVOL INC. and C.R. BARD, INC.

**ATTACHMENT**
**(Defendant Davol Inc.'s and**
**Defendant C.R. Bard, Inc.'s Notice of Removal)**

HASSARD BONNINGTON LLP
THOMAS M. FRIEDER, ESQ., State Bar No. 95411
Two Embarcadero Center, Suite 1800
San Francisco, California 94111-3941
Telephone: (415) 288-9800
Fax: (415) 288-9801
Email: tmf@hassard.com

Attorneys for Defendants
DAVOL INC. and C.R. BARD, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON, and BYRON RALSTON<br><br>Plaintiffs,<br><br>v.<br><br>DAVOL INC.; C.R. BARD, INC.; LODI MEMORIAL HOSPITAL, NAGUI SOROUR, M.D., and DOES 1 through 20,<br><br>Defendants. | Case No.<br><br>DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S NOTICE OF REMOVAL |

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Davol Inc. ("Davol") and Defendant C.R. Bard, Inc. ("Bard"), (collectively "Defendants"), hereby remove the above-captioned action from the Superior Court of California in and for San Joaquin County, California, to this Court. In support of removal, Defendants state as follows:

## I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

1. Plaintiffs' Complaint makes similar allegations to numerous other product liability complaints filed against Davol and Bard throughout the country. Plaintiffs

allege that the Composix® Kugel® Hernia Patch, an FDA-approved medical device distributed and sold by Davol for use in the repair of soft tissue defects, including ventral or incisional hernias, was defective and unreasonably dangerous when put to its intended use. These matters have been consolidated for pretrial proceedings. *See In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007). With Defendants' removal, the present action can and should become part of those MDL proceedings in due course.

2. Plaintiffs filed their Complaint in the Superior Court of California in and for San Joaquin County, California on or about June 8, 2008. Bard was served with the Complaint on June 17, 2008. Davol has not yet been served but expressly joins this Notice of Removal.

3. As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Davol and Bard (including Plaintiffs' Complaint) is attached as Exhibit A.

4. This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Superior Court of California in and for San Joaquin County, California, where Plaintiffs' Complaint is pending. *See* 28 U.S.C. § 84(b).

5. This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days after the first receipt by Davol or Bard, through service, of Plaintiffs' Complaint, which sets forth the bases for removal.

6. Pursuant to 28 U.S.C. § 1446(d), Davol and Bard are filing a written notice of this removal with the clerk of the Superior Court of California in and for San Joaquin County, California, where Plaintiffs' Complaint is pending. Copies of this Notice of Removal and the written notice of same that are being provided to the state court are also being served upon Plaintiffs' counsel in accordance with 28 U.S.C. § 1446(d).

/ / /

## II. THIS COURT HAS DIVERSITY JURISDICTION

7. As will be shown more fully below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiffs and Davol and Bard, the only properly joined defendants. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

### A. The Amount-In-Controversy Requirement Is Satisfied

8. Davol and Bard deny Plaintiffs' claims, but based on Plaintiffs' own allegations seek an unlimited amount of damages in excess of $25,000. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (in analogous cases, the amount-in-controversy threshold was met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000."). Further, based on the quality of plaintiffs' allegation it is clear more than $75,000 is in controversy and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiffs' claims sound in product liability and seek recovery for personal injuries allegedly caused by a defective medical device, the Composix® Kugel® hernia repair patch, that was designed and sold by Davol and used in conjunction with Plaintiffs' decedent's hernia repair. (*See* Attachment to Compl. ¶ Prod. L-1.) Plaintiffs allege that due to its allegedly defective design, the Composix® Kugel® hernia patch failed, and Plaintiffs' decedent Adela Joralmon eventually died . (*Id.* at ¶ GN-1 (d).) Plaintiffs also seek damages for "[f]uneral and burial expenses, the loss of love, companionship, comfort, care, assistance, protection, affection, society and financial and moral support of a mother." (See Compl. ¶ 11(g).) Plaintiffs now seek "an unlimited" amount in compensatory damages and other expenses exceeding $25,000. (*See* Compl. ¶ 14; *see also* Plaintiffs' Civil Case Cover Sheet.)

9. A defendant can establish the amount in controversy by the allegations in a complaint or by setting forth facts in the notice of removal that demonstrate that the

amount in controversy exceeds $75,000. Here, the amount-in-controversy requirement is easily met, because the types of injuries alleged in Plaintiffs' Complaint make it "facially apparent that the claims are likely above" the requisite amount-in-controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)); *see also Campbell v. Bridgstone/Firestone, Inc.*, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006); *In re Rezulin Prods.Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy to be satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions); *In re Silica Products Liability Litigation,* 398 F. Supp. 2d 563, 646 (S.D. Tex. 2005) (same); *Quinn v. Kimble*, 228 F. Supp. 2d 1038 (E.D. Mo. 2002) (same).

10. In fact, other plaintiffs have brought other actions against Davol and Bard making similar allegations as the ones expressed here pleading an amount-in-controversy in excess of $75,000. *See, e.g., Poston v. Davol Inc., et al.*, No. 2:07-cv-00032 (E.D. Cal.) (alleging damages "in the amount of $1,000,000,000"; plaintiff subsequently indicated there had been a clerical error, and the intended allegation was $1,000,000) (Ex. B); *Risley v. Davol Inc., et al.*, No. 07-cv-0806 (S.D. Cal.) (alleging damages in excess of requisite amount required by 28 U.S.C. § 1332) (Ex. C). *Cf. In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 295-96 (looking to other suits involving the same product to resolve amount-in-controversy inquiry).

**B. The Parties Properly Joined In This Action Are Completely Diverse**

10. Plaintiffs are residents and citizens of California.

11. Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. *See* Aff. of Mark Lederer (Ex. D). Accordingly, Davol is a citizen of those two states, and not California. *See* 28 U.S.C. § 1332(c)(1).

12. Bard is, and has been at all relevant times, a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. *See* Aff. of

Mark Lederer (Ex. D). Accordingly, Bard is a citizen of New Jersey, and not California. *See* 28 U.S.C. § 1332(c)(1).

13. The naming of fictitious defendants, namely Does 1 through 20, is disregarded in making determinations regarding removal. *See* 28 U.S.C. § 1441(a).

**C. The Remaining Defendants: Nagui Sorour, M.D.'s and Lodi Memorial Hospital's Consent To This Removal Is Not Needed.**

14. As set forth more fully below, Dr. Nagui Sorour and Lodi Memorial Hospital (collectively "Healthcare Defendants") are not proper parties to this suit, and therefore their consent to this removal is unnecessary. *See United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002)); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

**D. Healthcare Defendants Are Procedurally Misjoined, And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis**

15. The doctrine of misjoinder, applied through Rules 20 and 21 of the Federal Rules of Civil Procedure, permits the Court "to sever claims where the [plaintiff's] joinder [of parties and claims] is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by severance." *Greene v. Wyeth,* 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[W]here the non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, other interests prevail over that of permitting a plaintiff's choice of forum." *Id.*

16. The Healthcare Defendants are misjoined as parties here, and should be severed from this action to sustain this Court's diversity jurisdiction, because Plaintiffs' claims against them do not arise from the same transaction or occurrence as Plaintiffs' claims against Davol and Bard. In a case factually indistinguishable from the current matter, the Honorable Oliver Wanger severed and remanded medical negligence claims against non-diverse healthcare providers and retained jurisdiction

over Davol and Bard. *See Sutton v. Davol, Inc. et al.*, No. 1:08-cv-00280-OWW-GSA (E.D. Cal.) (holding "Plaintiffs' claims based on strict products liability against [medical device company] are separate from Plaintiffs' claims of medical negligence against California [healthcare] Defendants in implanting a previously recalled patch in [plaintiff]" in denying motion to remand) (Ex. E). His reasoning is well-supported by other courts that have addressed this issue. *In Re Guidant Defibrillators Product Liability Litigation,* Case No. 0:05-md-01708 (D. Minn. August 30, 2007) (denying plaintiff's motion to remand case back to Superior Court of Santa Clara County, California and severing the claim against physician from claims against medical device manufacturer) (Ex.F); *see also Crockett v. R.J. Reyonlds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (severing medical malpractice claim against health care provider defendants from product liability claims against product manufacturer); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) (finding, *inter alia*, that plaintiff's "additional claims against the health care provider for negligent administration of [the drug] after its withdrawal from the market do not arise out of the same transaction or occurrence as the claims against the drug manufacturer for negligent marketing and distribution and failure to warn").

17. Here, the allegations included in the Complaint against Defendants Bard and Davol are legally and factually distinct from the allegations against the Healthcare Defendants. The claims against Davol and Bard involve product-liability-related legal theories whereas the claims asserted by Plaintiff against the Healthcare Defendants involve a <u>medical</u> malpractice claim. (*See* Compl.) The essence of the claims against Davol and Bard arise from the design, testing, and manufacture of the Composix® Kugel® Patch before it was implanted in Plaintiffs' decedent. In contrast, the basis for the claims against the Healthcare Defendants arises from their negligent failure as health care providers to properly and adequately administer medical treatment. The evidence on the claims against the manufacturers and health care providers will be separate – manufacturer-specific evidence involving the design, testing, and

manufacture of the Patch on one hand and health care provider-specific evidence regarding Plaintiffs' decedent's treatment and health care providers' rendering of medical services and advice and performing surgery. *See Crockett*, 436 F.3d at 533. This fact encourages the severance of the claims.

18. Because Plaintiffs' claims against the Healthcare Defendants are separate, distinct, and severable from the claims against Bard and Davol, this Court has the discretion to grant remand with regard to the Healthcare Defendants, but to retain jurisdiction over the claims against Bard and Davol.

19. The presence of Bard or Davol is not necessary in order for Plaintiffs to effectively try their case in any potential lawsuit against the Healthcare Defendants. As such, the claims presented against the non-diverse Healthcare Defendants and Bard and Davol are improperly misjoined.

**E. Healthcare Defendants Are Fraudulently Joined, And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis**

20. A defendant may prove fraudulent joinder by showing that a plaintiff fails to state a cause of action against the non-diverse defendant and that "the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The removing defendant may present facts – including documentary evidence and affidavits – to support a claim of fraudulent joinder. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

21. Assuming the Healthcare Defendants are citizens of California (*see* Attachment to Compl. ¶ GN-1), their presence in this case does not destroy this Court's diversity jurisdiction because they are "fraudulently joined" as putative defendants. The fraudulent joinder doctrine prevents a plaintiff from defeating federal diversity jurisdiction merely by naming nominal, non-diverse defendants. In determining whether a non-diverse defendant has been fraudulently joined, this Court must determine whether the facts and allegations stated in Plaintiff's Complaint provide a basis for recovery against the non-diverse defendant. *See Morris v. Princess Cruise*

*Lines, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

22. Here, the allegations set out in Plaintiffs' Complaint provide no basis for recovery against Healthcare Defendants. Plaintiffs claim that Healthcare Defendants, namely Dr. Nagui Sorour, "negligently, carelessly and unskillfully examined, treated, cared for, diagnosed, operated upon, medically treated with medications, attended and otherwise handled and controlled the care of …decedent, thereby proximately causing injury and death…" and that Dr. Nagui Sorour was "negligent and careless in ordering this particular [hernia repair] patch and that [he] lacked the necessary knowledge and skill to properly care for [decedent's] condition and was negligent and unskillful in the diagnosing, surgical management and treatment for [decedent] Adela Joralmon's conditions." *See* Attachment to Compl. ¶ GN-1 (b) and ¶ GN-1 (c). Plaintiffs here provide no facts to support these conclusory allegations. *See Levine v. Citibank,* Civ. 07-2032, 2008 WL 220282 (S.D. Cal., Jan. 4, 2008).

23. Plaintiffs' bald allegations that the Healthcare Defendants committed "medical malpractice" (see Compl. ¶ 10) are insufficient to state a claim. In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court considered a plaintiff's pleading burden and held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. 1955, 1964-65 (2007); *see also id.* at 1965, n.3 ("[FED. R. CIV. P. 8(a)(2)] still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); *see also Levine v. Citibank*, Civ. 07-2032, 2008 WL 220282 (S.D. Cal., Jan. 4, 2008) (citing *Bell Atlantic Corp. v. Twombly*, *supra*). Thus, Plaintiffs' claims against the instate defendants are patently insufficient under any applicable standard because the allegations simply do not "possess enough heft" to "raise [Plaintiff's] right to relief above the speculative level," nor do they "remove the case

from the realm of conjecture and place it within the sphere of legitimate and rational inference." *Twombly,* 127 S. Ct. at 1965-66.

24. Because Plaintiffs' allegations fail to demonstrate a viable cause of action against the Healthcare Defendants, those defendants have been fraudulently joined as defendants in this action, and their citizenship should be "disregarded for purposes of diversity jurisdiction." *Gomes v. Michaels Stores, Inc.*, No. CIV. S-06-1921, 2006 WL 3079024, at *1 (E.D. Cal. Oct. 27, 2006) (finding "bare assertion" of potential liability on the part of non-diverse defendant, "without any specific factual allegations," insufficient to defeat removal on basis of fraudulent joinder); *see also In re Baycol Prods. Litig.*, No. 1431, Civ. 03-4954, 2004 WL 1118642, at *2 (D. Minn. May 17, 2004 ("[W]here the Complaint contains no factual allegations specific to any of the Plaintiffs and the medical treatment they received, Plaintiffs have failed to allege a sufficient factual basis for any claims against their physicians. . . . The Court thus finds that the allegations asserted against these Defendants are conclusory at best, and do not defeat a finding of fraudulent joinder."); *In re Rezulin Prod. Liab. Litig.*, No. 00cv2843, 2003 WL 43356, at *1 n.2 (S.D.N.Y. Jan. 6, 2003) (finding entirely conclusory allegation of negligence against non-diverse physician-defendant insufficient to state a claim and defeat removal on basis of fraudulent joinder); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 141 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiff failed to provide factual allegations that, if proven, would provide basis for relief against non-diverse defendant); *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) ("Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party."); *Doe v. Cloverleaf Ma*ll, 829 F. Supp. 866, 870 (S.D. Miss. 1993) (denying motion to remand in light of fraudulent joinder of non-diverse defendants, and noting that "[w]here the plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated."). Complete diversity of

citizenship exists between Plaintiff and Bard and Davol, the only parties properly joined as defendants in this action.

25. Plaintiffs have also failed to comply with California's mandatory pre-filing requirements for lawsuits involving health care providers and facilities, such as the Healthcare Defendants. (*See* Code Civ. Proc., § 340.5). The Healthcare Defendants Lodi Memorial Hospital and Dr. Nagui Sorour both fall into the definition of "health care provider" as defined in the California Code of Civil Procedure. (*See* Code Civ. Proc., § 364(f)(1).) According to this section, defendants must be given 90 days notice of intent to commence an action in medical malpractice claims against healthcare providers. (*Id.* at § 364(a) et seq.) These provisions of the California Code of Civil Procedure are applicable in this instant action, and as such, Plaintiffs were required to file a notice stating that they intended to commence an action against Lodi Memorial Hospital and Dr. Nagui Sorour. Plaintiffs have not done so, and therefore are not in compliance with the California Code of Civil Procedure.

26. Plaintiffs' claims against Healthcare Defendants Lodi Memorial Hospital and Dr. Nagui Sorour are further barred by the statute of limitations. California law requires that a wrongful death action against a healthcare provider based on medical negligence "be brought . . . one year after the plaintiff discovers, or through reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Code Civ. Proc. § 340.5; *see Knowles v. Superior Court*, 118 Cal. App. 4th 1290, 1295 (Cal. App. 2004) (holding that wrongful death claims were barred by statute of limitations when plaintiffs discovered claims more than one year before filing suit). Discovery of injury occurred, at the latest, on March 9, 2007 when Plaintiffs' decedent Adela Joralmon died as a result of the Healthcare Defendants' alleged negligence. (*See* Attachment to Compl. ¶¶ GN-1 (b) though (d).) Rather than bringing the lawsuit by March 9, 2008, Plaintiffs waited approximately 15 months to bring a lawsuit against the Healthcare Defendants even though the entire predicate of their claims were known or reasonably discoverable at the time of Plaintiffs' decedent's death. The Plaintiffs' failure to act

within this limitations period prescribed by law forestalls Plaintiffs causes of action.

WHEREFORE, Defendant Davol Inc. and Defendant C.R. Bard, Inc. respectfully remove this action from the Superior Court of California in and for San Joaquin County, California, to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide briefing and oral argument.

Dated: July 10, 2008

Respectfully submitted,

HASSARD BONNINGTON LLP

By /s/ Thomas M. Frieder
Thomas M. Frieder
Attorneys for Defendant DAVOL INC. and Defendant C. R. BARD, INC

# PROOF OF SERVICE

**Case Name:** **Ralston, et al. v. Davol Inc., et al.**

**Court:** **United States District Court**
**Eastern District of California**
**Sacramento Division**

**Case No.:**

1. At the time of service I was over 18 years of age and not a party to this action.
2. My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111.
3. On **July 10, 2008,** I served the following documents:

**DEFENDANT DAVOL INC.'S AND DEFENDANT C. R. BARD, INC.'S NOTICE OF REMOVAL**

4. I served the documents on the persons below as follows:

VICTOR F. STEFAN, ESQ.
THE BOCCARDO LAW FIRM LLP
111 W. St. John Street, Suite 400
San Jose, CA 95113
408-298-5678 (Phone)
408-298-7503 (Fax)

5. The documents were served by the following means (specify):

____ **By personal service**. I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening. The time of service was _________.

_X_ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

____ **By overnight delivery**. I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

____ **By messenger service**. I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)

____ **By fax transmission.** I faxed the documents to the persons at the fax numbers listed in item 4. No error was reported by the fax machine that I used.

____ **By e-mail or electronic transmission**. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: **July 10, 2008**

Esther Hom

# EXHIBIT A

06/06/08 08:26 FAX 408 28_ 300 THE BOCCARDO LAW 002

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)

FILED SUPERIOR COURT - STOCKTON

08 JUN -6 PM 1:46

ROSA JUNQUEIRO, CLERK

BY DOMINIC WILLIS DEPUTY

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
DAVOL, INC., C.R. BARD, INC., LODI MEMORIAL HOSPITAL, and NAGUI SOROUR, M.D.

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON and BYRON RALSTON

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
222 E. Weber Ave., Rm 303
Stockton CA 95202-2709

CASE NUMBER: 39-2008-00185831-CU-PL-STK

STOCKTON BRANCH

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
VICTOR P. STEFAN, ESQ. SBN 58386 (408)298-5678 (408)298-7503
THE BOCCARDO LAW FIRM
111 W. St. John Street, Suite 400

DATE: June 6, 2008 *(Fecha)* ROSA JUNQUEIRO Clerk, by *(Secretario)* DOMINIC WILLIS, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

11R0778 W - 6/6/2008 10:27:57 AM

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
VICTOR F. STEFAN, ESQ. SBN 58386
THE BOCCARDO LAW FIRM
111 W. St. John Street, Suite 400
San Jose, CA 95113
TELEPHONE NO.: (408)298-5678 FAX NO.: (408)298-7503
ATTORNEY FOR (Name): PLAINTIFFS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
STREET ADDRESS: 222 E. Weber Ave., Rm 303
MAILING ADDRESS: Stockton CA 95202-2709
CITY AND ZIP CODE: Stockton CA 95202-2709
BRANCH NAME: STOCKTON BRANCH

CASE NAME: RALSTON, ET AL. V. DAVOL, INC., ET AL.

FOR COURT USE ONLY
FILED
SUPERIOR COURT-STOCKTON
08 JUN -6 PM 1:49
ROSA JUNQUEIRO, CLERK
DOMINIC WILLIS
BY ______ DEPUTY

# CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 39-2008-00185831-CU-PL-STK
JUDGE: ELIZABETH HUMPHREYS
DEPT:

BY FAX

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [X] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action (*specify*): 2 - Product Liability, Medical Negligence
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: June 6, 2008
VICTOR F. STEFAN, ESQ. SBN 58386
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

## NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.





Legal Solutions Plus

11R30778 FIL 6/6/2008 10:27:57 AM

## INSTR IONS ON HOW TO COMPLETE THE C ER SHEET CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)—Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case—Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

06/06/08 08:20 FAX 408 29 ... 103 THE BOCCARDO LAW

PLD-PI-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
VICTOR F. STEFAN, ESQ. SBN 58386
THE BOCCARDO LAW FIRM
111 W. St. John Street, Suite 400
San Jose, CA 95113
TELEPHONE NO: (408)298-5678 FAX NO. (Optional): (408)298-7503
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): PLAINTIFFS

FOR COURT USE ONLY

FILED
SUPERIOR COURT-STOCKTON
08 JUN -6 PM 1:49
ROSA JUNQUEIRO, CLERK
BY DOMINIC WILLIS
DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
STREET ADDRESS: 222 E. Weber Ave., Rm 303
MAILING ADDRESS: Stockton CA 95202-2709
CITY AND ZIP CODE: Stockton CA 95202-2709
BRANCH NAME: STOCKTON BRANCH

PLAINTIFF: LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON and BYRON RALSTON

DEFENDANT: DAVOL, INC., C.R. BARD, INC., LODI MEMORIAL HOSPITAL, and NAGUI SOROUR, M.D.

[X] DOES 1 TO 20

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
[ ] AMENDED (Number):
Type (check all that apply):
[ ] MOTOR VEHICLE [X] OTHER (specify): Products Liability - Medical Malpractice
[ ] Property Damage [X] Wrongful Death
[ ] Personal Injury [ ] Other Damages (specify):

Jurisdiction (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE
Amount demanded [ ] does not exceed $10,000
[ ] exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
[ ] from limited to unlimited
[ ] from unlimited to limited

CASE NUMBER:
39-2008-00185831-CU-PL-STK

1. Plaintiff (name or names): LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON and BYRON RALSTON
alleges causes of action against defendant (name or names): DAVOL, INC., C.R. BARD, INC., LODI MEMORIAL HOSPITAL, and NAGUI SOROUR, M.D.
2. This pleading, including attachments and exhibits, consists of the following number of pages: 5
3. Each plaintiff named above is a competent adult

THIS CASE HAS BEEN ASSIGNED TO JUDGE ELIZABETH HUMPHREYS DEPARTMENT 41 FOR ALL PURPOSES, INCLUDING TRIAL

BY FAX

a. [ ] except plaintiff (name):
(1) [ ] a corporation qualified to do business in California
(2) [ ] an unincorporated entity (describe):
(3) [ ] a public entity (describe):
(4) [ ] a minor [ ] an adult
(a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
(b) [ ] other (specify):
(5) [ ] other (specify):

b. [ ] except plaintiff (name):
(1) [ ] a corporation qualified to do business in California
(2) [ ] an unincorporated entity (describe):
(3) [ ] a public entity (describe):
(4) [ ] a minor [ ] an adult
(a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
(b) [ ] other (specify):
(5) [ ] other (specify):

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

4. [ ] Plaintiff *(name):*
   is doing business under the fictitious name *(specify):*

   and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. [X] except defendant *(name):* DAVOL, INC.
      (1) [ ] a business organization, form unknown
      (2) [X] a corporation
      (3) [ ] an unincorporated entity *(describe):*
      (4) [ ] a public entity *(describe):*
      (5) [ ] other *(specify):*

   b. [X] except defendant *(name):* C.R. BARD, INC.
      (1) [ ] a business organization, form unknown
      (2) [X] a corporation
      (3) [ ] an unincorporated entity *(describe):*
      (4) [ ] a public entity *(describe):*
      (5) [ ] other *(specify):*

   c. [X] except defendant *(name):* LODI MEMORIAL HOSPITAL
      (1) [X] a business organization, form unknown
      (2) [ ] a corporation
      (3) [ ] an unincorporated entity *(describe):*
      (4) [ ] a public entity *(describe):*
      (5) [ ] other *(specify):*

   d. [ ] except defendant *(name):*
      (1) [ ] a business organization, form unknown
      (2) [ ] a corporation
      (3) [ ] an unincorporated entity *(describe):*
      (4) [ ] a public entity *(describe):*
      (5) [ ] other *(specify):*

   [ ] Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. [X] Doe defendants *(specify Doe numbers):* 1-20 were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. [X] Doe defendants *(specify Doe numbers):* 1-20 are persons whose capacities are unknown to plaintiff.

7. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
   a. [X] at least one defendant now resides in its jurisdictional area.
   b. [X] the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. [X] injury to person or damage to personal property occurred in its jurisdictional area.
   d. [ ] other *(specify):*

9. [ ] Plaintiff is required to comply with a claims statute, and
   a. [ ] has complied with applicable claims statutes, or
   b. [ ] is excused from complying because *(specify):*

PLD-PI-001

| SHORT TITLE: RALSTON, ET AL. V. DAVOL, INC., ET AL. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
    a. [ ] Motor Vehicle
    b. [ ] General Negligence
    c. [ ] Intentional Tort
    d. [X] Products Liability
    e. [ ] Premises Liability
    f. [X] Other *(specify)*: Medical Malpractice

11. Plaintiff has suffered
    a. [ ] wage loss
    b. [ ] loss of use of property
    c. [X] hospital and medical expenses
    d. [X] general damage
    e. [ ] property damage
    f. [ ] loss of earning capacity
    g. [X] other damage *(specify)*: Funeral and burial expenses, the loss of love, companionship, comfort, care, assistance, protection, affection, society and financial and moral support of a mother.

12. [X] The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
    a. [ ] listed in Attachment 12.
    b. [X] as follows:

    LEONARD RALSTON, EMERSON RALSTON and BYRON RALSTON - Sons

    ANGELITA RALSTON - Daughter

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. (1) [X] compensatory damages
    (2) [ ] punitive damages
    The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
    (1) [X] according to proof
    (2) [ ] in the amount of: $

15. [ ] The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: June 6, 2008

VICTOR F. STEFAN, ESQ.
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001(5)

SHORT TITLE: RALSTON, ET AL. V. DAVOL, INC., ET AL.

CASE NUMBER:

1st (number) **CAUSE OF ACTION—Products Liability**

Page 4

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name)*: LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON and BYRON RALSTON

Prod. L-1. On or about *(date)*: March 9, 2007 plaintiff was injured by the following product: Bard Composix Kugel Patch/Mesh, Kugel Composix 19x24cm REF#0010208 (LOT#43COD292)

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being

[X] used in the manner intended by the defendants.

[X] used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a The children of decedent Adela Joralmon who was a

[X] purchaser of the product.

[ ] bystander to the use of the product.

[X] user of the product.

[X] other *(specify)*: Surgical patient in whom the defective product was implanted.

PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:

Prod. L-4. [X] **Count One--Strict liability** of the following defendants who

a. [X] manufactured or assembled the product *(names)*: DAVOL, INC. and C.R. BARD, INC.

[X] Does 1 to 5

b. [X] designed and manufactured component parts supplied to the manufacturer *(names)*:

[X] Does 6 to 8

c. [X] sold the product to the public *(names)*: LODI MEMORIAL HOSPITAL

[X] Does 9 to 10

Prod. L-5. [X] **Count Two--Negligence** of the following defendants who owed a duty to plaintiff *(names)*: DAVOL, INC. and C.R. BARD, INC. and LODI MEMORIAL HOSPITAL

[X] Does 11 to 13

Prod. L-6. [X] **Count Three--Breach of warranty** by the following defendants *(names)*: DAVOL, INC. and C.R. BARD, INC. and LODI MEMORIAL HOSPITAL

[X] Does 14 to 17

a. [X] who breached an implied warranty

b. [X] who breached an express warranty which was

[X] written [X] oral

Prod. L-7. [X] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are

[ ] listed in Attachment-Prod. L-7 [X] as follows: Defendant Nagui Sorour, M.D. fell below the standard of care on October 3, 2005 during his surgical repair of Adela Joralmon's ventral incisional hernia.

PLD-PI-001(2)

| SHORT TITLE: RALSTON, ET AL. V. DAVOL, INC., ET AL. | CASE NUMBER: |
|---|---|

2nd (number) CAUSE OF ACTION—~~General Negligence~~ MEDICAL NEGLIGENCE Page 5

ATTACHMENT TO [X] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*: LEONARD RALSTON, ANGELITA RALSTON, EMERSON RALSTON and BYRON RALSTON

alleges that defendant *(name)*: NAGUI SOROUR, M.D.

[X] Does 18 to 20

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

on *(date)*: March 9, 2007

at *(place)*: Fairmont Rehabilitation Hospital, Lodi, California

*(description of reasons for liability)*:

a) Defendant Nagui Sorour, M.D. is a health care provider licensed in California pursuant to Business and Professions Code Sections 2000-2459 and was at all times practicing as a physician/surgeon at the Lodi Memorial Hospital, San Joaquin County, California.

b) On or about October 3, 2005 Plaintiffs' decedent Adela Joralmon underwent the surgical repair of a ventral hernia at the Lodi Memorial Hospital. The surgeon was Nagui Sorour, M.D. Plaintiffs' decedent Adela Joralmon, employed Defendant, to diagnose and treat Adela Joralmon with regard to her vetral hernia. Defendant agreed, for compensation, to diagnose and treat Adela Joralmon's medical condition and to do all things necessary for her care including but not limited to surgical repair of her ventral hernia, hospital management and necessary post-operative care. While Plaintiffs' decedent, Adela Joralmon was under the full and exclusive care and control of defendant Nagui Sorour, M.D. said Defendant, negligently, carelessly and unskillfully examined, treated, cared for, diagnosed, operated upon, medically treated with medications, attended and otherwise handled and controlled the care of Plaintiffs' decedent, thereby proximately causing injury and death to Adela Joralmon and damages to Plaintiffs herein.

c) Plaintiffs are informed and believe and thereon allege that Defendant Nagui Sorour, M.D. obtained from the Defendant hospital, Lodi Memorial Hospital, at the time of the October 3, 2005 surgical repair of Adela Joralmon's ventral hernia a Bard Composix Kugel Patch/Mesh, Kugel Composix 19x24cm and that Defendant Nagui Sorour, M.D. was negligent and careless in ordering this particular patch and that said Defendant lacked the necessary knowledge and skill to properly care for Adela Joralmon's condition and was negligent and unskillful in the diagnosing, surgical management and treatment of Adela Joralmon's conditions.

d) As a result of the Defendants' negligence, Plaintiffs' decedent, Adela Joralmon was not properly treated and as a result Adela Joralmon died on 3/9/07.

# EXHIBIT B

Thomas Minder, Esq., SBN 59808
Jonathan Saul, Esq., SBN 189271
THOMAS MINDER & ASSOCIATES
2151 River Plaza Drive, Suite 290
Sacramento, California 95833
Telephone: (916) 929-4400
Facsimile: (916) 929-4466

Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

FILED/ENDORSED
NOV 15 2006
By L. GUTIERREZ
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SACRAMENTO

| | |
|---|---|
| DANIEL POSTON and DARLINE POSTON, Plaintiffs, vs. DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, inclusive, Defendants. | CASE NO: 06AS04935<br>COMPLAINT - PRODUCT LIABILITY |

Plaintiffs DANIEL POSTON and DARLINE POSTON alleges against defendants DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, and each of them, as follows:

**PARTIES AND JURISDICTION**

1. Plaintiffs DANIEL POSTON and DARLINE POSTON are and were at all times relevant hereto residents of the State of California, County of Sacramento.

2. Plaintiffs are informed and believe, and thereon allege, defendant DAVOL, INC. (hereinafter "DAVOL") is a Delaware Corporation which provides medical supplies and instruments to medical providers throughout the United States, including California, and the Sacramento area, and has an agent for service of process in Los Angeles, California.

3. Plaintiffs are informed and believe, and thereon allege, defendant DAVOL, and ROES 11 through 20, manufactured, designed, marketed and provided the surgical mesh utilized

during the procedure in question, a hernia surgery, performed on Plaintiff DANIEL POSTON in or about June 2005.

4. Plaintiff DANIEL POSTON suffered complications following his hernia surgery, and was eventually informed, in August 2006, that the mesh utilized in his prior surgery had been recalled.

5. Plaintiff DANIEL POSTON was forced to undergo a subsequent procedure, in November 2006, during which the recalled mesh was removed.

6. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each of said Defendants was the agent and employee of each of the remaining Defendants and in doing each of the things alleged herein was acting within the course and scope of said agency and employment.

7. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 10 and ROES 11 through 20 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as "DOE" or "ROE" are legally responsible in some manner for the events and happenings herein referred to, and legally caused injuries and damages to Plaintiffs, as herein alleged. Plaintiffs will seek leave to insert the true names of said Defendants herein when they are ascertained.

**FIRST CAUSE OF ACTION**

**Negligence**

**(Defendant DAVOL, INC.)**

8. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-7, as though fully set forth herein.

9. That at all times herein mentioned, Defendant DAVOL and ROES 11 through 20, and each of them, negligently and carelessly researched, designed, manufactured, inspected, marketed, warranted, and advertised the surgical mesh utilized during the surgery in question, and that Defendants negligently and carelessly allowed the product to be sold, used and consumed by the general public. The product in question was unfit for its intended use inasmuch

as it caused personal injuries to the user and consumer when used in a manner reasonably foreseeable.

10. At all times mentioned herein, Defendant DAVOL and ROES 11 through 20, and each of them, knew or in the exercise of reasonable care should have known, that the product was of such a danger that it was likely to injure persons who used it.

11. At all times herein mentioned, Defendant DAVOL and ROES 11 through 20, and each of them, had a duty to properly research, design, manufacture, inspect, market, warrant and advertise the product and that Defendant DAVOL and ROES 11 through 20, and each of them, breached that duty to the general public and, in particular, to Plaintiff DANIEL POSTON.

12. Because of the negligence of Defendants DAVOL and ROES 11 through 20, and each of them, in the research, manufacture, inspection, marketing, warranting, and advertising the product, Plaintiff DANIEL POSTON sustained personal injuries.

13. As a legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON sustained injuries which have caused and continue to cause him mental, emotional and physical pain and suffering. Plaintiff DANIEL POSTON alleges that said injuries will result in some permanent disability, resulting in general damages in an amount in excess of the jurisdictional limits of this court.

14. As a further legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON was required to employ health care providers to treat and care for him. Plaintiffs have incurred medical expenses, the amount of which is presently unknown and said expenses are continuing to occur and, when finally determined, will ask leave of the Court to assert such damages.

## SECOND CAUSE OF ACTION

**Loss of Consortium**

**(Defendant DAVOL, INC.)**

15. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-14, as though fully set forth herein.

///

16. At all times herein mentioned, Plaintiff DARLINE POSTON was the wife of Plaintiff DANIEL POSTON. As a further direct and legal result of the negligence and carelessness of Defendants, and each of them, Plaintiff DARLINE POSTON has been deprived of the care, comfort, companionship, society, and consortium of her husband, all to Plaintiff DARLINE POSTON's damages in excess of the jurisdictional minimum of this court.

**THIRD CAUSE OF ACTION**

**Strict Liability**

**(Defendant DAVOL, INC.)**

17. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-16, as though fully set forth herein.

18. That at all times herein mentioned, Defendants DAVOL and ROES 11 through 20, and each of them, researched, designed, manufactured, inspected, marketed, warranted, and advertised the surgical mesh, which contained design, manufacturing and warning defects capable of causing personal injuries to the user and consumer while being used in a reasonably foreseeable manner. The aforementioned conduct rendered the product unsafe and dangerous for use by consumers, including Plaintiff DANIEL POSTON.

19. Defendants, and each of them, knew that the product was to be used without inspection for defects by Plaintiff DANIEL POSTON.

20. At all material times, the product hereinabove described was unsafe for its intended use by consumers by reason of defects in its manufacture and design rendering it unreasonably dangerous to foreseeable users.

21. Plaintiff DANIEL POSTON alleges that the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, in designing and manufacturing the product in question was the legal cause of his injuries and damages.

22. As a legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON sustained injuries which have caused and continue to cause him mental, emotional and physical pain and suffering. Plaintiff DANIEL

POSTON alleges that said injuries will result in some permanent disability, resulting in general damages in an amount in excess of the jurisdictional limits of this court.

**PRAYER**

WHEREFORE, Plaintiffs' pray for judgment against Defendants DAVOL, INC., DOES 1 through 10 and ROES 11 through 20, and each of them, as follows:

1. For general damages in an amount exceeding the jurisdictional minimum of this court;
2. For all medical and incidental expenses, according to proof;
3. For Plaintiff DARLINE POSTON's loss of consortium;
4. For lost earnings and earning capacity, according to proof;
5. For pre-judgment interest;
6. For costs of suit incurred herein; and,
7. For such other and further relief as the court deems just and proper.

Dated: November 10, 2006

THOMAS MINDER & ASSOCIATES

By ______________________
Jonathan Saul
Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

Thomas Minder, Esq., SBN 59808
Jonathan Saul, Esq., SBN 189271
THOMAS MINDER & ASSOCIATES
2151 River Plaza Drive, Suite 290
Sacramento, California 95833
Telephone: (916) 929-4400
Facsimile: (916) 929-4466

Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SACRAMENTO

| | |
|---|---|
| DANIEL POSTON and DARLINE POSTON,<br>Plaintiffs,<br>vs.<br>DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, inclusive,<br>Defendants. | CASE NO: 06AS04935<br>STATEMENT OF DAMAGES |

Comes now Plaintiff, DANIEL POSTON, and provides his Statement of Damages as follows:

1. Plaintiff will claim his reasonable and necessary medical expenses according to proof at the time of trial;

2. Plaintiff will claim general damages to compensate him for the pain, suffering, fear, anxiety, embarrassment and emotional distress which this incident has caused in the amount of $1,000,000,000.

Dated: November 20, 2006

THOMAS MINDER & ASSOCIATES

By ______________________
Jonathan Saul
Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

# EXHIBIT C

RECEIVED JUL 20 2007 C.R. BARD, INC. LAW DEPT

FILED 07 MAY -3 PM 12:42 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY: DEPUTY

Janice F. Mulligan, SB# 99080
Elizabeth A. Banham, SB# 131734
**MULLIGAN & BANHAM**
2442 Fourth Avenue , Suite 100
San Diego, CA 92101
Telephone (619) 238-8700
Facsimile (619) 238-8701

Christopher A. Seeger, Esq.
David R. Buchanan, Esq.
Scott Alan George, Esq.
**SEEGER WEISS LLP**
One William Street
New York, New York 10004
(212) 584-0700

Attorneys for Plaintiffs WENDY H. RISLEY and TRACY A. RISLEY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WENDY H. RISLEY; and TRACY A. RISLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVOL, INC., and C.R. BARD, INC.<br><br>Defendants. | Case No. 07 CV 0806 L (BLM)<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiffs herein, WENDY H. RISLEY and TRACY A. RISLEY, allege the following against Defendants DAVOL, INC., and C.R. BARD, INC.:

## NATURE OF THE CASE

1. Plaintiff, WENDY RISLEY ("Ms. RISLEY"), developed serious and potentially life threatening conditions caused by the insertion of a defective Bard Composix Kugel Mesh Hernia Patch, manufactured by Defendants DAVOL, INC., and C.R. BARD, INC. Plaintiffs seek relief for their injuries under claims of negligence, strict liability for failure to warn, strict liability for design defect, fraudulent concealment, and breach of warranty for Defendants' responsibilities in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, and distribution of the patch that caused Plaintiffs' injuries.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum of $75,000, exclusive of interest and costs, as to each defendant and is between citizens of different states.

3. Venue in this District is proper under 28 U.S.C. 1391. The events and omissions giving rise to this cause of action occurred in substantial part in this District and defendants transact business here.

4. Plaintiffs, and each of them, who reside in the City of El Cajon in the County of San Diego, in the State of California, are residents of the Southern District of California of the United States District Court, and the occurrences which give rise to this action took place in the Southern District of California of the United States District Court.

5. Plaintiff is informed and believes, and thereon alleges that Defendant C.R. BARD, INC., is a business organization incorporated in the state of New Jersey with its principal place of

business in New Jersey

6. Plaintiff is informed and believes, and thereon alleges that Defendant DAVOL, INC., is a business organization incorporated in the state of Rhode Island with its principal place of business in Rhode Island, and is a subsidiary or division of Defendant C. R. BARD, INC.

## BACKGROUND AND FACTUAL ALLEGATIONS

7. On or about May 5, 2005, Plaintiff Ms. RISLEY, underwent a hernia repair procedure at Naval Medical Center San Diego. During this procedure, physicians implanted a BARD KUGEL COMPOSIX MESH PATCH measuring approximately 10 x 14 cm in Plaintiff Ms. RISLEY. The lot number of the patch implanted was 43DOD232.

8. Defendants DAVOL, INC., and C.R. BARD, INC., through their agents, servants and employees, designed, manufactured, distributed, sold, marketed, and placed into the stream of commerce the patch that was implanted in Plaintiff Ms. RISLEY's body. The patch was designed, manufactured, distributed, sold, marketed, and placed into the stream of commerce to be used by surgeons for hernia repair surgeries and was further represented by Defendants, and each of them, to be an appropriate, safe, suitable product for such purposes.

9. Defendants DAVOL, INC., and C.R. BARD, INC., submitted their 510K application to the Federal Drug Administration ("FDA") on January 22, 2001. Following this application, the Kugel Patch was authorized by the FDA as a Class II medical device.

10. On December 22, 2005, Defendants DAVOL, INC., and C.R. BARD, INC., issued a recall of many sizes of the Kugel Patch, including the size implanted in Plaintiff Ms. RISLEY's body. The recall was due to a faulty "memory recoil ring" that was known to break under stress or pressure, including the stress of implantation. The ring was also known to migrate in the

body. These defects were known to cause severe injuries including bowel perforation, bowel obstruction, intestinal fistulae, and infections. At the time of the recall, there had been numerous reports of injury and death caused by the defective patch.

11. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., failed to comply with FDA application and reporting requirements.

12. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled, and before it was implanted in Plaintiff Ms. RISLEY.

13. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., were aware of the defect in manufacture and design prior to their recall of the patch and prior to the implantation of the patch into Plaintiff Ms. RISLEY's body.

14. In the days that followed her May 5, 2005 surgery, plaintiff Ms. RISLEY developed abdominal tightness, hypotension, and respiratory difficulties. The surgeons operated again on or about May 8th, 2005, to rule out abdominal catastrophe. The surgeons found a grossly edematous bowel and increased intraabdominal pressure.

15. The following day the surgeons had to operate again after Ms. RISLEY failed to improve and in fact deteriorated even further. On or about May 9, 2005, a third surgery was performed wherein Ms. RISLEY's worsening condition necessitated a left hemicoloectomy and removal of her ovaries. Within days the doctors had to operate to repair a perforated bowel.

16. During the following days and months, Ms. RISLEY underwent approximately 30 procedures under general anesthesia to address abdominal fistulas, infections, and other complications.

17. Ms. RISLEY has suffered and will continue to suffer serious and severe physical pain and mental anguish.

18. Ms. RISLEY has suffered and will continue to suffer brain damage resulting in her inability to live a full and complete life. This includes her inability to fully participate in the lives of her children and husband and to provide household services that she used to provide.

19. Ms. RISLEY has suffered a loss of income and earning capacity.

20. Ms. RISLEY's husband, Plaintiff TRACY RISLEY , has suffered loss of consortium.

21. At all times relevant, Plaintiff TRACY RISLEY was and continues to be married to Plaintiff Ms. RISLEY.

## FRAUDULENT CONCEALMENT

22. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept Plaintiffs and others ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiffs' part in filing a complaint on their causes of action. Their fraudulent concealment did result in such delay.

23. Plaintiffs could not reasonably have discovered the claims made herein until shortly before filing this complaint.

24. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in Plaintiff Ms. RISLEY, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

25. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

26. Defendants DAVOL, INC., and C.R. BARD, INC., were negligent to Plaintiffs in the following respects:

27. DAVOL, INC. and C.R. BARD, INC., at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

28. DAVOL, INC. and C.R. BARD, INC. at all times mentioned knew, or in the exercise of reasonable care, should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

29. DAVOL, INC. and C.R. BARD, INC. so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, failed to label, distributed, recommended, displayed, sold, examined, failed to examine, and supplied the Kugel Patch, that it was dangerous and unsafe for the use and purpose for which it was intended.

30. DAVOL, INC. and C.R. BARD, INC. were aware of the probable consequences of the Kugel Patch. DAVOL, INC. and C.R. BARD, INC. knew or should have known the Kugel Patch

would cause serious injury. They failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL, INC. and C.R. BARD, INC. willfully and deliberately failed to avoid those consequences, and in so doing, they acted in conscious disregard of the safety of Ms. RISLEY.

31. Defendants DAVOL, INC. and C.R. BARD, INC. owed a duty to Plaintiffs to adequately warn them and Ms. RISLEY's physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

32. Defendants DAVOL, INC. and C.R. BARD, INC. breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

33. As a direct and proximate result of the duties breached, the Kugel Patch used in Ms. RISLEY's hernia repair surgery failed, resulting in Ms. RISLEY suffering pain and harm.

34. As a direct and proximate result of Defendants' negligence, Ms. RISLEY has suffered injuries and damages.

35. Defendants DAVOL, INC. and C.R. BARD, INC. conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to, or a conscious disregard of, the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, INC. and C.R. BARD, INC. and others from similar conduct in the future.

SECOND CAUSE OF ACTION

STRICT PRODUCTS LIABILITY - FAILURE TO WARN

36. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

37. At all times herein mentioned, the Kugel Patch was designed and/or manufactured in a defective condition or manner, including but not limited to, causing users, consumers, and patients who would foreseeably come into contact with the Kugel Patch, including Ms. RISLEY, to be injured from said product. The defective and dangerous condition of the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Ms. RISLEY had her hernia repair surgery in which the Kugel Patch was implanted, the Patch was in the same condition as when it was manufactured, distributed, and sold.

38. Defendants failed to provide any warnings, labels or instructions of the Patch's dangerous propensities that were known or reasonably knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product, including but not limited to rupture of the patch causing severe injuries including bowel perforation, bowel obstruction, recurring fistulas, and recurring infections which would require multiple subsequent surgeries.

39. At all times herein mentioned, the Plaintiff did not know of the defective condition, danger of breakage and the high risk of subsequent bodily injuries until on or about April 22, 2007 when Plaintiff and Plaintiff's husband heard about it in the media.

40. Plaintiff used the Kugel Patch in a normal, customary, and foreseeable manner as any consumer would and as it was intended to be used by Defendants.

41. Plaintiffs suffered the aforementioned injuries and damages as a direct and proximate result of Defendants' failure to warn.

42. The use of said product by Plaintiff as the product was intended involved a substantial danger that bowel and intestinal damage would occur. This substantial danger was not readily apparent to the Plaintiff.

43. The conduct of DAVOL, INC., and C.R. BARD, INC. in continuing to market, promote, sell, and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter. DAVOL, INC., C.R. BARD, INC. and other from similar conduct.

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY - MANUFACTURING and DESIGN DEFECT

44. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

45. Defendants DAVOL, INC. and C.R. BARD, INC. are strictly liable to Plaintiffs in the following respects:

46. Defendants C.R. BARD, INC. and DAVOL, INC., provided the Kugel Patch which was defectively manufactured. The patch was defective in that it contained a "memory recoil ring" which can and does break under the stress of placement. The ruptured recoil ring can cause perforation of the bowel, bowel obstruction, chronic intestinal fistulae, infection and

other unknown injury. This defect in the Kugel Patch caused it to fail while in Ms. RISLEY's body causing her to develop serious physical complications which required numerous subsequent painful surgeries and continuing complications.

47. At all times, when Defendants C.R. BARD and DAVOL, INC., sold this product, it was in a defective condition, unreasonably dangerous to Plaintiff Ms. RISLEY.

48. At all times mentioned, the Kugel Patch was in substantially the same condition as when it left the possession of the Defendants.

49. At all times mentioned, the Kugel Patch implanted into Ms. RISLEY was being used in a manner reasonably anticipated at the time it was implanted.

50. At all times relevant, Defendants, and each of them, knew this product was inherently dangerous for its intended use and was unreasonably dangerous constituting an unreasonable risk of injury to Ms. RISLEY as follows:

a. The Kugel Patch was sold in a defective condition by design and manufacture;

b. The Kugel Patch as designed and manufactured was unsafe to Ms. RISLEY;

c. The Kugel Patch as designed and manufactured was unreasonably dangerous to Ms. RISLEY;

d. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Ms. RISLEY would expect;

e. The Kugel Patch was unsafe for its intended use;

f. Defendants failed to warn the end user about the dangers and risks of the product;

g. Defendants knew the component parts of the Kugel Patch as implemented through

design and/or manufacture could cause injury to the end user;

h. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to during implantation or within the intra-abdominal space;

i. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of hernia repair surgery;

j. Any other acts or failures to act by DAVOL, INC. or C.R. BARD, INC. regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, promoting, distributing, and/or sale of the Kugel Patches as will be learned during discovery.

51. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that the patch's were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, INC. and C.R. BARD, INC. and others from similar conduct in the future.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

52. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

53. Defendants DAVOL, INC. and C.R. BARD, INC. are liable to Plaintiffs for their breach of implied warranty in the following respects:

54. Defendants sold the Kugel Patch which was implanted in Ms. RISLEY. Defendants impliedly warranted to Ms. RISLEY, her physicians and health care providers that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

55. Defendants knew or should have known that the Kugel Patch at the time of sale was intended for the purpose of surgically implanting it into the body for hernia repair.

56. Plaintiffs reasonably relied on Defendants' judgment, indications and statements that the Kugel Patch was fit for such use.

57. When the Kugel Patches were distributed into the stream of commerce and sold by Defendants, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that they had very dangerous propensities when used as intended and implanted into the patient's body where they could cause serious injury of harm or death to the end user.

58. Ms. RISLEY suffered such injuries and damages as a result of the Defendants' conduct and actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against the Defendants, jointly and severally, for economic and non-economic damages in an amount as provided by law and to be determined by a jury; an award of attorney's fees and costs of suit as allowed by law; and such other legal and equitable relief as this Court may deem just and proper.

/

/

/

## JURY DEMAND

Plaintiffs request a trial by jury.

May 3, 2007

MULLIGAN & BANHAM

BY: ______________________

Elizabeth A. Banham Esq.
Attorney for Plaintiffs WENDY H. RISLEY
and TRACY A. RISLEY

# EXHIBIT D

**AFFIDAVIT OF MARK LEDERER**

COMES NOW, Mark Lederer, and having first been duly sworn states as follows:

1. My name is Mark Lederer. I am over the age of eighteen, and I am otherwise fully competent to make this affidavit.

2. I am the Vice President and Controller for Davol Inc. ("Davol"). Davol is a wholly owned subsidiary of C. R. Bard, Inc. ("Bard"). My duties for Davol include responsibility for the financial oversight and business operations of Davol. In conjunction with my duties for Davol I have access to information concerning the business operations of Bard as well. Therefore, I have knowledge of, or have been made aware of, the financial and business information set forth below relating to Bard.

**Davol Inc.**

3. Davol is incorporated under the laws of the State of Delaware. Davol has never been, nor has it ever sought to be, organized under the laws of the State of California. Attached to this affidavit as **Exhibit 1** is a copy of Davol's Articles of Incorporation.

4. Davol maintains its principal place of business in Rhode Island.

a. Davol's corporate headquarters is located in Warwick, Rhode Island. Davol does not maintain any corporate offices in California.

b. The vast majority of Davol's employees are located in Rhode Island. Davol employs 305 employees. Two-hundred of those employees are located in Rhode Island, including the majority of Davol's executive officers. Other than nine Territory and District Managers (sales representatives) who reside in California, no Davol employees are located in California.

c. The vast majority of Davol's real and tangible property is located within the State of Rhode Island. Davol does not own any land, building or other real property within the State of California.

d. The vast majority of Davol's production activities are conducted outside the State of California and primarily within either the State of Rhode Island or the Commonwealth of Puerto Rico. No production activities are conducted within the State of California.

e. Davol's products are sold nationwide, and therefore most of Davol's sales take place outside the State of California. Davol sales of all products, including those irrelevant to this particular matter, amounted to $281,737,087 for fiscal year 2007. Of that total sales figure, only 7.9% occurred within the State of California. During 2007, that State of Georgia had the highest percentage of Davol's total sales, which accounted for 8.99%. In 2007 and 2008, Davol had sales in all 50 states.

**C.R. Bard, Inc.**

5. Bard is incorporated under the laws of the State of New Jersey. Bard has never been, nor has it ever sought to be, organized under the laws of the State of California. Attached to this affidavit as **Exhibit 2** is a copy of Bard's Articles of Incorporation.

6. Bard maintains its principal place of business in New Jersey.

a. Bard's corporate headquarters is located in Murray Hill, New Jersey. Bard does not maintain any corporate offices in California.

b. The majority of Bard's employees are located outside of the State of California. Bard employs 2,439 employees. Of those, 2,371 employees are located outside of the State of California, including all of Bard's executive officers.

c. The majority of Bard's real and tangible property is located outside of the State of California, a large percentage of which is located within the State of New Jersey. Bard does not own any land, building or other real property within the State of California.

d. Bard's production activities are all conducted outside of the State of California. No production activities are conducted within the State of California.

e. Bard's products are sold nationwide, and therefore most of Bard's sales take place outside the State of California. Sales of all Bard products, including those irrelevant to this particular matter, amounted to $855,197,944 for fiscal year 2007. Of that total sales figure, 8.9% occurred within the State of California. Other states yielded relatively similar sales percentages, including Arizona, which accounted for 6.025%; Texas, which accounted for 4.99%; and Florida, which accounted for 4.44%. In 2007 and 2008, Bard had sales in all 50 states.

FURTHER AFFIANT SAYETH NOT.

Mark Lederer

Warwick, Rhode Island

Subscribed to and sworn before me this 2nd day of July, 2008.

Notary Public

My Commission Expires: 8/15/10

# EXHIBIT 1

# CERTIFICATE OF INCORPORATION

# OF

# DAVOL INC.

I, the undersigned, in order to form a corporation for the purposes hereinafter stated, under and pursuant to the provisions of the General Corporation Law of the State of Delaware, being Title 8 Chapter 1 of the Delaware Code of 1953, and the Acts amendatory thereof and supplementary thereto, do hereby certify as follows:

FIRST: The name of the corporation is DAVOL INC. (hereinafter called the "Corporation").

SECOND: The location of the registered office of the Corporation in the State of Delaware is 100 West Tenth Street, in the City of Wilmington, County of New Castle. The name of its registered agent at that address is The Corporation Trust Company.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

S



FOURTH: The total number of shares of stock which the Corporation shall have authority to issue is one hundred shares of common stock of the par value of $10 per share.

FIFTH: The name and address of the incorporator is as follows:

| Name | Address |
|---|---|
| Bartlett H. McGuire | 207 East 74th Street<br>New York, New York 10021 |

SIXTH: The powers of the incorporator shall terminate upon the filing of this Certificate of Incorporation. The names and addresses of the persons who are to serve as directors of the Corporation until the first annual meeting of stockholders or until their successors are elected and qualify are set forth below in accordance with Section 102(a)(6) of the General Corporation Law of Delaware:

| Name | Address |
|---|---|
| Bartlett H. McGuire | 207 East 74th Street<br>New York, New York 10021 |
| Edwin C. Cohen | 132 State Street<br>Brooklyn, New York 11201 |
| E. Deane Leonard | 1148 Fifth Avenue<br>New York, New York 10028 |

S



SEVENTH: In furtherance and not in limitation of the powers conferred by law, the Board of Directors of the Corporation is expressly authorized:

(a) To make, alter, amend or repeal the By-Laws of the Corporation.

(b) To direct and determine the use and disposition of net profits or net assets in excess of capital; to set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose; and to abolish any such reserve in the manner in which it was created.

(c) To establish bonus, profit-sharing, stock option, retirement or other types of incentive or compensation plans for the employees (including officers and directors) of the Corporation and to fix the amount of the profits to be distributed or shared and to determine the persons to participate in any such plans and the amounts of their respective participations.

(d) From time to time to determine whether and to what extent, and at what time and places and under what conditions and regulations, the accounts and books of the Corporation (other than the stock ledger), or any of them, shall be open to the inspection of the stockholders; and no stockholder shall have any right to inspect any account or book or document of the Corporation, except as conferred by statute or authorized by the Board of Directors or by a resolution of the stockholders.

(e) To authorize, and cause to be executed, mortgages and liens upon the real and personal property of the Corporation.

EIGHTH: Whenever the vote of stockholders at a meeting thereof is required or permitted to be taken for or in connection with any corporate action by any

s

REC 2-96 PAGE 296

provision of the General Corporation Law of Delaware, the meeting and vote of stockholders may be dispensed with if the holders of stock having not less than the minimum percentage of the vote required by statute for the proposed corporate action shall consent in writing to such corporate action being taken, provided that prompt notice must be given to all stockholders of the taking of such corporate action without a meeting and by less than unanimous written consent.

NINTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by law, and all rights and powers conferred herein on stockholders and directors are subject to this reserved power.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the 14th day of October, 1968.

Bartley H McGuire (SEAL)

REC 2-96 PAGE 297

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On this 14th day of October, 1968, there personally came before me Bartlett H. McGuire, the person who executed the foregoing certificate, known to me personally to be such, and he duly executed said certificate before me and acknowledged that it was his act and deed and that the facts stated therein are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

Serafina R. Di Preta

SERAFINA R. DI PRETA
Notary Public, State of New York
No. 41-0967225 Queens County
Cert. filed in New York County
Term expires March 30, 1969

SERAFINA R. Di PRETA
NOTARY PUBLIC
STATE OF NEW YORK

REC 2-96 PAGE 298

# State of Delaware

## Office of Secretary of State.

I, Elisha C. Dukes, Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of Certificate of Incorporation of the "DAVOL INC.", as received and filed in this office the fifteenth day of October, A.D. 1968, at 10 o'clock A.M.

In Testimony Whereof, I have hereunto set my hand and official seal at Dover this fifteenth day of October in the year of our Lord one thousand nine hundred and sixty-eight.

Elisha C Dukes
Secretary of State

Ass't Secretary of State

FORM 121

RECF--99 PAGE 465

# State of Delaware

## Office of Secretary of State.

I, Eugene Bunting, *Secretary of State of the State of Delaware,* do hereby certify *that the above and foregoing is a true and correct copy of* Certificate of Change of Agent and Location of Registered Office of the "DAVOL INC.", as received and filed in this office the eighteenth day of March, A.D. 1969, at 9 o'clock A.M.

In Testimony Whereof, *I have hereunto set my hand and official seal at Dover this* eighteenth *day of* March *in the year of our Lord one thousand nine hundred and* sixty-nine.

Eugene Bunting

Secretary of State

Ass't Secretary of State

FORM 121

REC'D FOR RECORD Mar. 19, 1969 LEO J. DUGAN, Jr. Recorder

REC F--99 PAGE 463

CERTIFICATE OF CHANGE OF LOCATION OF REGISTERED OFFICE

AND OF REGISTERED AGENT

It is hereby certified that:

1. The name of the corporation (hereinafter called the "corporation") is Davol Inc.

2. The registered office of the corporation within the State of Delaware is hereby changed to 229 South State Street, City of Dover, County of Kent.

3. The registered agent of the corporation within the State of Delaware is hereby changed to The Prentice-Hall Corporation System, Inc., the business office of which is identical with the registered office of the corporation as hereby changed.

4. The corporation has authorized the changes hereinbefore set forth by resolution of its Board of Directors.

Executed at New York , New York, on March 13 , 1969

[corporate seal]

Vice-President

Attest:

Secretary



Del.-FHA-flexo

REC F--99 PAGE 464

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF NEW YORK )

BE IT REMEMBERED that, on March 13, 1969, before me, a Notary Public duly authorized to take acknowledgement of deeds by the laws of the place where the foregoing instrument was executed, personally came Charles R. Beall, Vice-President of Davol Inc.,

who duly signed said instrument before me and acknowledged that his signing of the said instrument upon behalf of said corporation is his act and deed, that the said instrument as executed is the act and deed of said corporation, and that the facts stated in the said instrument are true.

GIVEN under my hand on *March 13*, 19*69*.

*Frank H. Argenzio*
Notary Public

FRANK H. ARGENZIO
NOTARY PUBLIC, State of New York
No. 03-5099617
Qualified in Bronx County
Cert. filed in New York County
Commission Expires March 30, 1970

NOTARY PUBLIC

~~[If notary has seal of office, affix same]~~,



Del.-FHA-flexo

VOL M120 PAGE 834

BOOK B VOL 53 PAGE 191

CERTIFICATE OF CHANGE OF REGISTERED AGENT

AND

REGISTERED OFFICE

OF

DAVOL INC.

* * * * * *

DAVOL INC., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, DOES HEREBY CERTIFY:

The present registered agent of the corporation is THE PRENTICE-HALL CORPORATION SYSTEM, INC. and the present registered office of the corporation is in the County of Kent.

The Board of Directors of DAVOL INC., by the unanimous written consent of its members, filed with the minutes of the board, duly adopted the following resolution:

> "Resolved, that the registered office of DAVOL INC. in the State of Delaware be and it hereby is changed to No. 100 West Tenth Street, in the City of Wilmington, County of New Castle, and the authorization of the present registered agent of this corporation be and the same is hereby withdrawn, and THE CORPORATION TRUST COMPANY, shall be and is hereby constituted and appointed the registered agent of this corporation at the address of its registered office."

IN WITNESS WHEREOF, DAVOL INC. has caused this statement to be signed by EDWARD G. GEIST, its Vice President, and attested by ROBERT C. WICKETT, its Assistant Secretary, this 7th day of November 1975.

By [signature]
Edward G. Geist, Vice President

ATTEST:

By [signature]
Robert C. Wickett,
Assistant Secretary

jk

BOOK 13 VOL 53 PAGE 193

VOL M120 PAGE 838

# State of DELAWARE

Office of SECRETARY OF STATE

*I,* Robert H. Reed, *Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of* Certificate of Change of Agent and Location of Registered Office of the "DAVOL INC.", as received and filed in this office the tenth day of December, A.D. 1975, at 10 o'clock A.M.

In Testimony Whereof, *I have hereunto set my hand and official seal at Dover this* tenth *day of* December *in the year of our Lord one thousand nine hundred and* seventy-five.

RECEIVED FOR RECORD
Dec. 10 A.D. 19 75
Robert J. Conaway
RECORDER

Robert H. Reed
Robert H. Reed Secretary of State

Ass't Secretary of State

RECORDED FOR RECORD DEC 17 1975 19

LEO J. DUGAN, Jr. Recorder

# EXHIBIT 2

**C. R. BARD, INC.**

**RESTATED CERTIFICATE OF INCORPORATION**

Pursuant to the provisions of Section 14A:9-5, Corporations, General, of the New Jersey Statutes, the undersigned Corporation hereby executes the following Restated Certificate of Incorporation:

FIRST: The name of the corporation is C. R. BARD, INC.

SECOND: The purpose or purposes for which the Corporation is organized are to engage in any activity within the lawful business purposes for which corporations may be organized under the New Jersey Business Corporation Act.

THIRD: The aggregate number of shares which the Corporation is authorized to issue is 605,000,000 shares, consisting of 600,000,000 shares of Common Stock, par value $.25 (Twenty Five Cents) per share, and 5,000,000 shares of Preferred Stock, par value $1.00 (One Dollar) per share. The designations, relative rights, preferences and limitations of the shares of each class shall be as follows:

Subject to the provisions hereof, the Board of Directors is hereby expressly authorized to divide shares of Preferred Stock into classes and into series within any class or classes, to issue the shares of Preferred Stock in such class or classes and in series within any class or classes, and to fix from time to time, before issuance, the number of shares to be included in each class or series within a class and the designation, relative rights, preferences and limitations of all shares of each class or series within a class. The authority of the Board of Directors with respect to each class or series within a class shall include, without limitation, the determination of any or all of the following matters:

(a) The number of shares constituting such class or series within a class and the designation thereof to distinguish the shares of such class or series within a class from the shares of all other classes or series;

(b) The annual dividend rate on the shares of such class or series within a class and whether such dividends shall be cumulative and, if cumulative, the date from which dividends shall accumulate;

(c) The redemption price or prices for shares of such class or series within a class, if redeemable, and the terms and conditions of such redemption;

(d) The preference, if any, of shares of such class or series within a class in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation;

(e) The voting rights, if any, of shares of such class or series within a class in addition to the voting rights prescribed by law and the terms of exercise of such voting rights;

(f) The rights, if any, of shares of such class or series within a class to be converted into shares of any other class or series, including Common Stock, and the terms and conditions of such conversion;

(g) The terms or amount of any sinking fund provided for the purchase or redemption of such class or series within a class; and

(h) Any other relative rights, preferences and limitations of such class or series within a class.

The shares of each class and of each series within a class may vary from the shares of any other class or series as to any of such matters.

Dividends on all outstanding shares of Preferred Stock must be declared and paid, or set aside for payment, before any dividends may be declared and paid, or set aside for payment, on shares of Common Stock with respect to the same dividend period.

Each share of Common Stock shall be equal in all respects to every other share of Common Stock.

FOURTH: No holder of any shares of the Corporation, now or hereafter authorized, shall have any right as such holder to purchase or subscribe for or otherwise acquire any shares or any securities or obligations convertible into, or exchangeable for, or any right, warrant or option to purchase, any shares of any class which the Corporation may at any time hereafter issue or sell, whether now or hereafter authorized, but any and all such shares, securities, obligations, rights, warrants and options may be issued and disposed of by the Board of Directors to such persons, firms, corporations and associations, and for such lawful consideration, and on such terms, as the Board of Directors in its discretion may determine, without first offering the same, or any thereof, to the shareholders.

FIFTH: The address of the Corporation's current registered office is 730 Central Avenue, Murray Hill, New Jersey 07974, and the name of the Corporation's current registered agent at such address is Stephen J. Long.

SIXTH: The Board of Directors of the Corporation shall consist of no fewer than three and no more than fourteen directors, with the exact number of directors to be determined in accordance with the By-Laws of the Corporation. The directors of the Corporation shall be divided into three classes, namely, Classes I, II and III, with each class consisting of not fewer than one nor more than five directors, as determined in accordance with the By-Laws of the Corporation. At each annual meeting of shareholders, the successors to any class of directors whose terms shall then expire shall be elected to serve until the third annual meeting following their election and until their successors shall be elected and qualified. Directors elected as hereinbefore provided may not be removed prior to the expiration of their respective terms of office without cause.

Notwithstanding any provision of this Restated Certificate of Incorporation to the contrary, (1) no amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any provision of this Article SIXTH except upon the affirmative vote of the

holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon, and (2) no amendment to this Restated Certificate of Incorporation shall be adopted empowering shareholders to remove directors without cause except upon the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon.

The number of directors constituting the current Board of Directors is ten, the address for each of them is C. R. Bard, Inc., 730 Central Avenue, Murray Hill, New Jersey 07974, and their names and classes are as follows:

CLASS I

Timothy M. Ring
Marc C. Breslawsky
Herbert L. Henkel
Tommy G. Thompson

CLASS II

Theodore E. Martin
Anthony Welters
Tony L. White

CLASS III

T. Kevin Dunnigan
Gail K. Naughton, Ph.D.
John H. Weiland

SEVENTH: The Corporation shall indemnify its directors, officers and employees in the manner and to the extent permitted by the laws of the State of New Jersey.

EIGHTH: Subject to the provisions of the New Jersey Business Corporation Act, contracts or other transactions between the Corporation and its directors or between the Corporation and other firms or associations in which its directors are interested in any way, shall not be void or voidable due solely to such common interest.

NINTH: Subject to the provisions of the New Jersey Business Corporation Act, the directors, and committee members appointed by the Board of Directors, shall not be liable in the discharge of their duties when relying in good faith upon the corporate records and/or competent advice of any type.

TENTH: Except for actions required or permitted to be taken at a meeting of shareholders by Chapter 10 of the New Jersey Business Corporation Act, any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of

votes which would be required to take such action at a meeting at which all shareholders entitled to vote thereon are present.

ELEVENTH: Except as set forth below, the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon, shall be required in order to authorize or adopt (a) any agreement for the merger or consolidation of the Corporation with or into any other corporation which is required by law to be approved by shareholders, (b) any sale, lease, transfer or other disposition by the Corporation of all or any substantial part of the assets of the Corporation to any other corporation, person or other entity, or (C) any issuance or delivery of securities of the Corporation in exchange or payment for any securities, properties or assets of any other person in a transaction in which the authorization or approval of shareholders of the Corporation is required by law or by any agreement to which the Corporation is a party, if as of the record date for the determination of shareholders entitled to notice thereof and to vote thereon or consent thereto, such other corporation, person or entity which is a party to such transaction is the beneficial owner, directly or indirectly, of more than 5% of the outstanding shares of stock of the Corporation.

For the purpose of this Article ELEVENTH (a) any corporation, person or other entity shall be deemed to be the beneficial owner of any shares of stock of the Corporation (i) which it owns directly, whether or not of record, or (ii) which it has the right to acquire pursuant to any agreement or understanding or upon exercise of conversion rights, warrants or options, or otherwise, or (iii) which are beneficially owned, directly or indirectly (including shares deemed owned through application of clause (ii) above), by an "affiliate" or "associate" (as defined below) or (iv) which are beneficially owned, directly or indirectly (including shares deemed owned through application of clause (ii) above), by any other corporation, person or entity with which it or its "affiliate" or "associate" has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of stock of the Corporation, and (b) the outstanding shares of any class of stock of the Corporation shall include shares deemed owned through application of clauses (a) (ii), (iii) and (iv), above but shall not include any other shares which may be issuable pursuant to any agreement, or upon exercise of conversion rights, warrants or options, or otherwise.

The term "affiliate" is defined as:

An "affiliate" of, or a person "affiliated" with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the persons specified.

The term "associate" is defined as:

The term "associate" used to indicate a relationship with any person, means (1) any corporation or organization (other than this Corporation or a majority-owned subsidiary of this Corporation) of which such person is an officer or partner or is, directly or indirectly, the beneficial owner of 10% or more of any class of equity securities, (2) any trust or other estate in which such person has a substantial beneficial interest or as to which such person serves as trustee or in a similar fiduciary capacity,

and (3) any relative or spouse of such person, or any relative of such spouse, who has the same home as such person or who is a director or officer of this Corporation or any of its parents or subsidiaries.

The provisions of this Article ELEVENTH shall not be applicable to (i) any merger or consolidation of the Corporation with or into any other corporation, or any sale or lease of all or any substantial part of the assets of the Corporation to any other corporation, person or entity, if the Board of Directors of the Corporation shall by resolution have approved a memorandum of understanding, letter of intent or agreement with such other corporation, person or entity with respect to and substantially consistent with such transaction, prior to the time that such other corporation, person or entity shall have become a beneficial owner of more than 5% of the outstanding shares of stock of the Corporation, or (ii) any merger or consolidation of the Corporation with, or any sale to the Corporation or any subsidiary thereof of any of the assets of, any corporation of which a majority of the outstanding shares of stock is owned of record or beneficially by the Corporation and its subsidiaries.

The Board of Directors shall have the power and duty to determine for the purposes of this Article ELEVENTH on the basis of information known to the Corporation, whether (i) such other corporation, person, or other entity beneficially owns more than 5% of the outstanding shares of stock of the Corporation, (ii) such corporation, person or entity is an "affiliate" or "associate" (as defined above) of another, and (iii) the memorandum of understanding, letter of intent or agreement referred to above is substantially consistent with the transaction covered thereby. Any such determination shall be conclusive and binding for all purposes of this Article ELEVENTH.

No amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any of the provisions of this Article ELEVENTH, unless the amendment affecting such amendment, alteration, change or repeal shall receive the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon.

TWELFTH: The provisions of this Article TWELFTH shall be applicable to any transaction to which Article ELEVENTH is applicable (each such transaction being referred to hereinafter in this Article TWELFTH as a "Special Business Combination"); provided, however, that the provisions of this Article TWELFTH shall not be applicable to any Special Business Combination which shall have been approved by a majority of those members of the Corporation's Board of Directors who were in office immediately prior to the time when any shareholder of the Corporation which is a party to such Special Business Combination became an Interested Shareholder (as such term is defined below). No Special Business Combination to which this Article TWELFTH is applicable shall be authorized or adopted unless the conditions specified in clauses (i) and (ii) below are satisfied:

(i) Minimum Price and Form of Consideration

(A) The holders of shares of each class or series of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon ("Voting Shares") are to receive in such Special Business Combination an aggregate amount of cash and fair

value of consideration per share other than cash that either shall be solely in cash or shall be in the same form and of the same kind as the consideration paid by the Interested Shareholder and its "affiliates" and "associates" (as such terms are defined in Article ELEVENTH) in acquiring the majority of the outstanding Voting Shares beneficially owned by them at the time of such Special Business Combination; and

(B) The holders of shares of Common Stock of the Corporation are to receive in such Special Business Combination an aggregate amount of cash and fair value of consideration per share other than cash that shall be at least equal to the higher of the following:

(1) the highest per share price (with appropriate adjustments for recapitalization and for stock splits, stock dividends and similar distributions) paid by such Interested Shareholder and its affiliates and associates for any shares of Common Stock acquired by them within the three-year period prior to the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination; or

(2) the per share book value of the Common Stock at the end of the fiscal quarter immediately preceding the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination; and

(C) The holders of shares of each class or series of Voting Shares other than Common Stock, if any, are to receive in such Special Business Combination an aggregate amount of cash and fair value of consideration per share other than cash that shall be at least equal to the highest per share price (with appropriate adjustments for recapitalizations and for stock splits, stock dividends and similar distributions) paid by such Interested Shareholder and its affiliates and associates for any shares of such class or series of Voting Shares acquired by them within the three-year period prior to the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination.

(ii) Procedural Requirements

(A) After such Interested Shareholder has become an Interested Shareholder and prior to the consummation of such Special Business Combination, (1) there shall have been no failure to declare and pay at the regular date therefor any full periodic dividends (whether or not cumulative) on any Preferred Stock issued and outstanding pursuant to this Restated Certificate of Incorporation, (2) there shall have been (x) no reduction in the annual rate of dividends paid on the Common Stock (except as necessary to reflect any subdivision of the Common Stock) and (y) an increase in such annual rate of dividends as necessary to reflect any reclassification (including any reverse stock split), recapitalization, reorganization or any similar transaction that has the effect of reducing the number of outstanding shares of the Common Stock, and (3) such Interested Shareholder shall not have become the beneficial owner of any

additional shares of Voting Shares except as part of the transaction that results in such Interested Shareholder's becoming an Interested Shareholder.

(B) After such Interested Shareholder has become an Interested Shareholder, such Interested Shareholder shall not have received the benefit, directly or indirectly (except proportionately as a shareholder), of any loans, advances, guarantees, pledges or other financial assistance or any tax credits or other tax advantages provided by the Corporation.

(C) A proxy or information statement describing the proposed Special Business Combination and complying with the requirements of the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder (or any subsequent provisions replacing such Act, rules or regulations) shall be mailed to public shareholders of the Corporation at least 30 days prior to the consummation of such Special Business Combination (whether or not such proxy or information - statement is required to be mailed pursuant to such Act or subsequent provisions). Any such proxy or information statement shall also contain the recommendations of each of the members of the Board of Directors as to the advisability of the proposed Special Business Combination as well as the opinion of an investment banker selected by a majority of the members of the Board of Directors as to the fairness of the terms of the proposed Special Business Combination to the Corporation and its shareholders.

The Board of Directors shall have the power and duty to determine for the purposes of this Article TWELFTH on the basis of information known to the Corporation (i) whether any corporation, person, or other entity beneficially owns more than 5% of the outstanding shares of stock of the Corporation, (ii) whether any corporation, person or entity is an "affiliate" or "associate" (as defined in Article ELEVENTH) of another; (iii) whether a Special Business Combination has been proposed, (iv) the fair value of any consideration other than cash to be received by holders of shares of any class or series of Voting Shares in a Special Business Combination; and (v) any other relevant facts necessary to determine the applicability of any provision of this Article TWELFTH to a Special Business Combination. Any such determination shall be conclusive and binding for all purposes of this Article TWELFTH.

For the purposes of this Article TWELFTH, the term "Interested Shareholder" is defined as the beneficial owner, directly or indirectly (including shares deemed owned by an "affiliate" or "associate" of such person as described in Article ELEVENTH), of more than 5% of the outstanding shares of stock of the Corporation.

No amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any of the provisions of this Article TWELFTH, unless the amendment effecting such amendment, alteration, change or repeal shall receive the affirmative vote of the holders of at least a majority of the voting power of each class of capital stock of the Corporation; provided, however, that if on the record date for the meeting at which such proposed action is submitted to shareholders there is an Interested Shareholder who has proposed a Special Business Combination, or on whose behalf a Special Business Combination has been

proposed, then the votes of such Interested Shareholder and its affiliates and associates shall not be counted in calculating the requisite vote for approval of the proposed action.

THIRTEENTH: Except as expressly permitted in the next succeeding paragraph of this Article THIRTEENTH, any purchase by the Company, or any Subsidiary (as hereinafter defined), of shares of Voting Stock (as hereinafter defined) from a 5% Shareholder (as hereinafter defined) at a per share price in excess of the Market Price (as hereinafter defined) at the time of such purchase of the shares so purchased shall require the affirmative vote of the holders of that amount of the voting power of the Voting Stock equal to the sum of (i) the voting power of the shares of Voting Stock of which the 5% Shareholder is the beneficial owner (as hereinafter defined) and (ii) a majority of the voting power of the remaining outstanding shares of Voting Stock, voting together as a single class.

The provisions of the first paragraph of this Article THIRTEENTH shall not be applicable to any purchase of shares of Voting Stock pursuant to (i) an offer, made available on the same terms, to the holders of all of the outstanding shares of the same class of Voting Stock as those so purchased or (ii) a purchase program effected on the open market and not as a result of a privately-negotiated transaction.

For the purposes of this Article THIRTEENTH:

(i) A "person" shall mean any individual firm, corporation or other entity.

(ii) "Voting Stock" shall mean the outstanding shares of all classes of capital stock of the Company entitled to vote generally in the election of directors.

(iii) "5% Shareholder" shall mean any person (other than the Company or any Subsidiary) who or which:

(a) is the beneficial owner, directly or indirectly, of more than 5% of the voting power of the outstanding shares of Voting Stock; or

(b) is an affiliate (as such term is defined in Article ELEVENTH) of the Company and at any time within the two-year period immediately prior to the date in question was the beneficial owner, directly or indirectly, of more than 5% of the voting power of the then outstanding shares of Voting Stock; or

(c) is an assignee of or has otherwise succeeded to any shares of Voting Stock which were at any time within the two-year period immediately prior to the date in question beneficially owned by any 5% Shareholder, if such assignment or succession shall have occurred in the course of a transaction or series of transactions not involving a public offering within the meaning of the Securities Act of 1933.

(iv) A person shall be a "beneficial owner" of any shares of Voting Stock:

(a) which such person or any of its affiliates or associates (as such term is defined in Article ELEVENTH) beneficially owns, directly or indirectly; or

(b) which such person or any of its affiliates or associates has (1) the right to acquire (whether such right is exercisable immediately or only after the passage of time), pursuant to any agreement, arrangement or understanding or upon the exercise of conversion rights, exchange rights, warrants or options, or otherwise, or (2) the right to vote pursuant to any agreement, arrangement or understanding; or

(c) which are beneficially owned, directly or indirectly, by any other person with which such person or any of its affiliates or associates has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of any shares of Voting Stock.

(v) For the purpose of determining whether a person is a "5% Shareholder" pursuant to clause (iii) above, (the number of shares of Voting Stock deemed to be outstanding shall include shares deemed owned through application of clause (iv) above, but shall not include any other shares of Voting Stock which may be issuable pursuant to any agreement, arrangement or understanding, or upon exercise of conversion rights, warrants or options, or otherwise.

(vi) "Subsidiary" shall mean any corporation of which a majority of any class of equity security is owned, directly or indirectly, by the Company; provided, however, that for the purpose of the definition of a "5% Shareholder" set forth in clause (iii) above the term "Subsidiary" shall mean only a corporation of which a majority of the voting power of the capital stock entitled to vote generally in the election of directors is owned, directly or indirectly, by the Company.

(vii) "Market Price" shall mean the last closing sale price immediately preceding the time in question of a share of the stock in question on the Composite Tape for New York Stock Exchange Listed Stocks, or, if such stock is not quoted on the Composite Tape, on the New York Stock Exchange, or, if such stock is not listed on such Exchange, on the principal United States securities exchange registered under the Securities Exchange Act of 1934 on which such stock is listed, or, if such stock is not listed on any such exchange, the last closing bid quotation with respect to a share of such stock immediately preceding the time in question on the National Association of Securities Dealers, Inc., Automated Quotations System or any comparable system then in use (or any other system of reporting or ascertaining quotations then available), or, if such stock is not so quoted, the fair market value at the time in question of a share of such stock as determined by a majority of the entire Board of Directors in good faith.

The Board of Directors of the Company shall have the power and duty to determine for the purposes of this Article THIRTEENTH, on the basis of information known to them after reasonable inquiry, (i) whether the provisions of this Article THIRTEENTH are applicable to a particular transaction (ii) whether a person is a 5% Shareholder, (iii) the number

of shares of Voting Stock beneficially owned by any person and (iv) whether a person is an affiliate or an associate of another person. The good faith determination of the Board of Directors shall be conclusive and binding for all purposes of this Article THIRTEENTH.

Notwithstanding any other provision of this Restated Certificate of Incorporation or the By-Laws, as amended, of the Company (and notwithstanding the fact that a lesser percentage may be specified by law, this Restated Certificate of Incorporation or the By-Laws, as amended, of the Company), the affirmative vote of the holders of at least seventy-five percent of the voting power of the outstanding Voting Stock, voting together as a single class, shall be required to alter, amend or repeal, or adopt any provision inconsistent with, this Article THIRTEENTH.

FOURTEENTH: A director or officer of the Corporation shall not be personally liable to the Corporation or its shareholders for breach of duty as a director or officer, except to the extent and for the duration of any period of time such personal liability may not be eliminated or limited under the New Jersey Business Corporation Act as the same exists or may hereafter be amended.

FIFTEENTH: Except as otherwise required by law, directors of the Corporation shall be elected by the affirmative vote of a majority of the votes cast in person or by proxy by the holders of outstanding shares of all classes of capital stock of the Corporation entitled to vote for the election of directors, at a meeting at which a quorum is present, unless the number of nominees exceeds the number of directors to be elected, in which case, directors shall be elected by a plurality of the votes cast in person or by proxy by the holders of outstanding shares of all classes of capital stock of the Corporation entitled to vote for the election of directors, at the meeting at which a quorum is present. Any votes that may be "withheld", within the meaning of Rule 14a-4(b)(2) of the proxy solicitation rules and regulations promulgated under the Securities Exchange Act of 1934, as amended, shall be counted as cast for the purpose of determining the number of votes cast.

Dated as of the 11th day of June, 2008.

C. R. BARD, INC.

By ______________________________
Timothy M. Ring
Chairman and Chief Executive Officer



SFNJ1 1215964v2

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SUTTON, et al., Plaintiffs, vs. DAVOL, INC., et al., Defendants. | No. CV-F-08-280 OWW/GSA<br>MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REMAND AND SEVERING AND REMANDING CLAIMS AGAINST DEFENDANTS JONATHAN SALES, M.D., BAKERSFIELD MEMORIAL HOSPITAL AND CATHOLIC HEALTHCARE WEST TO KERN COUNTY SUPERIOR COURT (Doc. 11) |

Plaintiffs Brian Sutton and Deborah Sutton filed a Complaint for Damages in the Superior Court of California, County of Kern. The Complaint alleges fourteen causes of action for personal injuries Brian Sutton suffered as a result of being implanted with the Kugel® Patch (hereafter the "Patch"). Plaintiffs allege that the Patch "is and was designed, compounded, manufactured, tested for safety, marketed, advertised, distributed, labeled, sold, recommended and implanted by Defendants."

Plaintiffs allege that they are citizens and residents of Bakersfield, California. The Complaint alleges that Defendants Davol Inc., Bard Devices, Inc. and C.R. Bard, Inc., are citizens of Delaware (the Diverse Defendants) and that Defendants Jonathan Sales, M.D., Bakersfield Memorial Hospital, and Catholic Healthcare West are citizens of California (the California Defendants).

The Complaint alleges that the Diverse Defendants developed and manufactured the Patch; that the Diverse Defendants were required to conduct post market surveys of the device validation process; that, in January 2006, the FDA issued a 2006 EIR finding that the post market survey validation process was incomplete and deliberately failed to include all data from physicians which demonstrated unfavorable or dissatisfied results; that the Diverse Defendants failed to cease distribution or notify American consumers of the severity of complications associated with the Patch until December of 2005; that Diverse Defendants continued to manufacture and distribute other versions of the Patch; that the FDA conducted investigations of these versions of the Patch and determined that Diverse Defendants had failed to take actions to correct problems or misidentified or excluded problems concerning the Patch; and that Diverse Defendants expanded the recall in 2006 to include these other versions of the Patch. The Complaint alleges that the first recall of the Patch occurred on December 22, 2005. On February 22, 2006, Defendant Sales surgically implanted Brian Sutton with the Patch

on February 22, 2006 at Bakersfield Memorial Hospital. On March 26, 2007, the California Defendants sent Plaintiffs a letter admitting that these defendants implanted Plaintiff with the Patch after it had been recalled by the FDA and after they had received notice of the product recall, necessitating a second surgery.

On February 26, 2008, Defendants Davol Inc., Bard Devices Inc., and C.R. Bard, Inc. removed Plaintiffs' Complaint to this Court on the basis of diversity of citizenship "between Plaintiffs and Davol and Bard, the only properly joined defendants." The California Defendants did not consent to the removal.

A Multidistrict case is pending in the District of Rhode Island against the the removing Defendants, MDL Docket No. 1842 - *In re: Kegal Mesh Hernia Patch Product Liability Litigation*.

Plaintiffs move to remand this action to the Kern County Superior Court.

For the reasons stated in this Memorandum Decision, Plaintiffs' claims against the California Defendants are severed and remanded to the Kern County Superior Court; the motion to remand is denied as to removing Defendants.

A. <u>MISJOINDER</u>.

Plaintiffs seek remand on the ground that the California Defendants have not been misjoined in this action and have not

consented to the removal.[1]

28 U.S.C. § 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

The Ninth Circuit recognizes one exception to he requirement of complete diversity - where a non-diverse defendant has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.2001):

> Fraudulent joinder, we have noted, 'is a term of art.' *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'
> ....

*Id.* The removing defendant bears the burden of proving that removal is appropriate and is entitled to present facts that the joinder is fraudulent. *McCabe v. General Foods Corp.*, *id.* at 1339.

Defendants do not contend that Plaintiffs fail to state a cause of action against the California Defendants. Rather, Defendants rely on a line of authority commencing with *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d

[1]There is no issue concerning the amount in controversy.

1069 (11th Cir.2000).

In *Tapscott*, a putative class action was removed. Numerous classes of defendants were joined under Fed. R. Civ. Proc. Rule 20. The *Tapscott* court held that the factual commonality among the plaintiffs' claims against the different classes of defendants was not sufficient to satisfy Rule 20:

> The joinder of defendants in this action has been accomplished solely through Rule 20. The district court, finding no allegation of joint liability between Lowe's and any other defendant and no allegation of conspiracy, held there was an 'improper and fraudulent joinder, bordering on a sham.' The court rejected Appellant's argument that 'a mere allegation of a common business practice subjects all defendants to joinder.' ... Disregarding the citizenship of the improperly joined parties, the district court asserted jurisdiction and severed and remanded the remainder of the action to state court.
>
> It is important to note that Appellants have not contended that Lowe's was properly joined with any other non-diverse defendants. Rather, they contend that while a court may disregard the citizenship of fraudulently joined parties, a misjoinder, no matter how egregious, is not fraudulent joinder. We disagree.
>
> Joinder of defendants under Rule 20 requires: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction or occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. Fed. R. Civ. P. 20(a). The district court correctly found no allegation of joint liability or any allegation of conspiracy. Further, the alleged transactions involved in the 'automobile' class are wholly distinct from the alleged transactions involved in the 'merchant' class. The only similarity between the allegations in the 'automobile'

> class and the 'merchant' class are allegations of violations of Alabama Code §§ 5-19-1, 5-19-19, and 5-19-20. Such commonality on its face is insufficient for joinder.
>
> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.' *Wilson v. Republic Iron & Sheet Co.*, 257 U.S. 92, 97 ... (1921). Although certain putative class representatives may have colorable claims against resident defendants in the putative 'automobile' class, these resident defendants have no real connection with the controversy involving Appellant Davis and West and Appellee Lowe's in the putative 'merchant' class action. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360. The only other Circuit to adopt the *Tapscott* fraudulent misjoinder exception to the requirement of complete diversity of citizenship is the Fifth Circuit in *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir.2002). The Ninth Circuit has not addressed this issue.

The District Courts, including those in the Ninth Circuit, are split concerning the applicability of the *Tapscott* fraudulent misjoinder exception and the basis upon which it is applied. District Court cases in the Ninth Circuit have also split. *See In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2007 WL 2572048 (D.Minn.2007); *Greene v. Wyeth*, 344

F.Supp.2d 674, 684-685 (D.Nev.2004); *In re Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 148 (S.D.N.Y.2001); *compare Snyder v. Davol, Inc.*, 2008 WL 113902 (D.Or.2008); *Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127-1128 (E.D.Cal.2004); *Brazina v. Paul Revere Life Ins. Co.*, 271 F.Supp.2d 1163, 1172 (N.D.Cal.2003)

Defendants, relying on *Greene*, *Crockett*, and other District Court decisions from other circuits applying *Tapscott*, argue that the California Defendants have been "fraudulently misjoined", thereby making removal of this action appropriate:

> [T]he allegations included in the Complaint against Bard and Davol are legally and factually distinct from the allegations against the Healthcare Defendants. The claims against Davol and Bard involve product-liability-related legal theories whereas the claims asserted by Plaintiffs against the Healthcare Defendants, on the other hand, involve a medical negligence claim ... The essence of the claims against Davol and Bard arise from the design, testing and manufacture of the Composix® Kugel® Patch before it was implanted in Mr. Sutton. In contrast, the basis for the claims against the Healthcare Defendants arise from their negligent or fraudulent failure as health care providers to properly comply with the voluntary product recall notices provided to them, resulting in a recalled product being implanted into Mr. Sutton. The evidence on the claims against Bard and Davol and the Healthcare Defendants will be separate - manufacture-specific evidence involving the design, testing, and manufacture of the Patch on one hand and health care provider-specific evidence regarding Plaintiffs' treatment and health care providers' response to recall warnings on the other.

Defendants' legal and factual position is compelling,

especially in the context of MultiDistrict Litigation.

Plaintiffs alternatively argue that the joinder of the claims and parties in the Complaint was proper under California law, thereby negating the *Tapscott* exception.

Although a threshold issue is whether California's joinder rules or Rules 20-21, Federal Rules of Civil Procedure, apply to make this determination, California Code of Civil Procedure § 379(a)(1) and Rule 20(a)(1) are virtually identical. Section 379(a)(1) provides:

> All persons may be joined in one action as defendants if there is asserted against them:
>
> (1) Any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action ....

Rule 20(a)(1), Federal Rules of Civil Procedure, provides:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Because of the similarity between Section 379(a)(1) and Rule 20(a)(1), it is unnecessary to resolve whether the state procedure or the federal procedure should apply in determining if the *Tapscott* fraudulent misjoinder exception has been satisfied

for purposes of removal and remand.

The factual background and analysis in *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, *supra*, is persuasive that the joinder of the California Defendants is improper. Plaintiffs' claims based on strict products liability against the removing Defendants are separate from Plaintiffs' claims of medical malpractice against the California Defendants in implanting a previously recalled patch in Plaintiff Sutton. Plaintiffs' claims against the California Defendants are not based on the allegedly negligent testing and manufacture of the Patch and cannot be under California law. *See e.g. Hector v. Cedars-Sinai Medical Center*, 180 Cal.App.3d 493, 500-502 (1986). In addition, Plaintiffs represented to the MultiDistrict Litigation Panel in their Brief in Support of Motion to Vacate Conditional Transfer Order:

> Admittedly, the claims in this case against DAVOL, BARD DEVICES, C.R. BARD involve common questions of fact and law as the cases already transferred to the MDL Proceedings. However, the claims of medical negligence asserted against Medical Defendants involves ***factual and legal issues unique to this case***.

As in *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, *supra*, Plaintiffs' claims against the California Defendants are severed and remanded pursuant to Rule 21, Federal Rules of Civil Procedure, so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the

products liability case can be coordinated in a single forum.

B. CONSENT.

Plaintiffs further argue that remand is required because of the failure of all defendants to consent to the removal. Plaintiffs' argue that Defendants' assertion of procedural or fraudulent misjoinder cannot be sustained because, in the Ninth Circuit, fraudulent joinder is a "term of art" necessitating a showing that Plaintiffs have not stated a cause of action under state law. *McCabe, id.*

Because the *Tapscott* fraudulent misjoinder exception is applied, the *McCabe* test for fraudulent joinder is inapplicable.

In *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir.1988), the Ninth Circuit noted:

> The parties dispute who exactly is a defendant in this suit within the meaning of the federal removal statute. Certain of the individually named defendants and Touche Ross & Co. contend they are not defendants because they were never served and did not join in the petition for removal. Emrich and Gillberg reply that a petition for removal necessarily binds all defendants and thus, makes all the defendants named in the complaint parties to this appeal. Both parties are partially correct. Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties ... This general rules applies, however, only to defendants properly joined and served in the action. *See Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1429 (9th Cir.1984)(noting 'a party not served need not be joined' in a petition for removal). On appeal, the record is unclear as to whether none or merely some of the defendants were served or otherwise subject to the

> jurisdiction of the state court. On remand, therefore, the district court is requested to determine what defendants were properly served and to permit amendment of the removal petition to name all the proper defendants. The failure to join all proper defendants in a removal petition may otherwise render the removal petition procedurally defective ....

Plaintiffs argue that the statement in *Emrich* that the unanimity requirement for removal applies "only to defendants properly joined and served in the action" is *dicta* and that the *Salveson* case cited by *Emrich* only held that a defendant not served need not join in the removal petition. Therefore, Plaintiffs contend, *Emrich* does not constitute valid authority for the proposition that the Ninth Circuit recognizes an exception to the unanimity requirement for improper joinder. Plaintiffs note that Defendants cite in support of this position are cases from other circuits, one of which follows the fraudulent misjoinder theory.

Plaintiffs' position is without merit. Although the statement in *Emrich* may be dicta, the Ninth Circuit in *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir.2002), held that the rule of unanimity does not apply to fraudulently joined parties:

> If the fraudulence of a defendant's joinder is irrelevant for purposes of determining diversity, and there is no obligation to join such a defendant in a removal petition, there is no good reason why date of service on a fraudulently joined defendant should commence the thirty-day time period for removal under § 1446(b)."

This decision underscores *Emrich* and implies that a failure to

obtain the consent of an improperly joined defendant, as determined under the *McCabe* line of authority, does not negate an otherwise proper removal.

C. REQUEST FOR ATTORNEYS' FEES.

Plaintiffs couple their motion to remand with a request for move for an award of attorneys' fees and costs in the amount of $4,500.00.

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award such fees is within the district court's discretion and does not require a finding of bad faith removal because the purpose of such an award is not punitive, but rather to reimburse a plaintiff for wholly unnecessary litigation costs caused by defendant. *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446-447 (9th Cir. 1992).

Plaintiffs argue that an award of fees should be granted in this action:

> Removing Defendants fail to establish a single exception to the Complete Diversity or Forum Defendant rules as recognized by the Ninth Circuit. Rather, Defendants ask this Court, contrary to controlling case law, to create a new exception known as procedural misjoinder. Even if the Court accepted Defendants' version of the procedural misjoinder theory, it would not apply in this case, as joinder was clearly proper under California's permissive joinder statute. Lastly, the notice of removal was procedurally defective, as not all Defendants consented to removal.

Plaintiffs' request for attorneys' fees is DENIED. The Ninth Circuit has yet to address the *Tapscott* decision. *See HVAC Sales, Inc. v. Zurich American Ins. Group*, 2005 WL 2216950 (N.D.Cal.2005) at * 8, where the District Court, after ruling that *Tapscott* would not be applied, ruled:

> Although this court concludes that removal was improper, AMCO and SAFECO asserted tenable legal positions. *See Schmidt*, 780 F.Supp. at 704 (rejecting a fee request because '[t]he minority position regarding third-party removal is a plausible legal and factual basis for asserting removal jurisdiction'). Most courts that have awarded fees have done so when a defendant should have been aware that removal was improper ... That is not the case here.

Further, Plaintiffs' assertion that the consent of the California Defendants was required for removal based on fraudulent misjoinder is not the law in the Ninth Circuit.

## CONCLUSION

For the reasons stated:

1. Plaintiffs' motion to remand is GRANTED IN PART AND DENIED IN PART;

2. Plaintiffs' claims against Defendants Jonathan Sales, M.D., Bakersfield Memorial Hospital, and Catholic Healthcare West are SEVERED AND REMANDED to the Kern County Superior Court;

3. Counsel for Defendants shall prepare and lodge a form of order setting forth the rulings in this Memorandum Decision within five (5) days following the date of service of this decision.

///

IT IS SO ORDERED.

**Dated: May 27, 2008**

**/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Donald Alexander,<br><br>Plaintiff,<br><br>v. Civil No. 07-1129 (DWF/AJB)<br><br>Boston Scientific Corporation, Guidant Subsidiary of Boston Scientific Corporation, and St. Anthony's Medical Center,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER** |

Donald Alexander, 31057 Oak Ridge Drive, Rocky Mount, MO 65072, *pro se.*

Timothy A. Pratt, Esq., Deborah A. Moeller, Esq., and Julie R. Somora, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Boston Scientific Corporation and Guidant Subsidiary of Boston Scientific Corporation.

Douglas Ponder, Esq., Karen C. Moske, Esq., and V. Scott Williams, Esq., Hazelwood & Weber, LLC, counsel for Defendant St. Anthony's Medical Center.

The above-entitled matter is before the Court pursuant to Plaintiff Donald Alexander's Motion for Remand to St. Louis County Circuit Court and Defendant St. Anthony's Medical Center's ("St. Anthony's") Motion to Dismiss. For the reasons stated below, the Court grants Alexander's Motion for Remand as to Defendant

St. Anthony's, but denies the motion as to all remaining Defendants. The Court denies St. Anthony's Motion to Dismiss as moot.

**BACKGROUND**

On May 25, 2006, Alexander was implanted with a Model 1291 Guidant pacemaker at St. Anthony's facilities. Alexander alleges that some of St. Anthony's nurses and staff assisted in the implant. Alexander also alleges that St. Anthony's paid for the pacemaker and included the charges for the pacemaker in Alexander's patient billing.

The Model 1291 device that was implanted in Alexander was manufactured in December 2005. Prior to its manufacture, on September 22, 2005, Guidant issued a recall regarding its Model 1291 Guidant pacemakers, among others. The recall was based on two failure modes.

As to the first failure mode, Guidant recommended that physicians "consider the projected low and declining failure rate in addition to the unique needs of individual patients in their medical decisions regarding patient management" and recommended "normal monitoring, as per device labeling." (Aff. of V. Scott Williams in Supp. of Def. St. Anthony's Mot. to Dismiss and Mem. of Law in Opp'n to Pl.'s Mot. for Remand ("Williams Aff.") at Ex. C.) In addition, Guidant stated, "As always, advise patients to seek attention immediately if they experience syncope or lightheadedness." (*Id.*) As to the second failure mode, Guidant recommended the following:

> Guidant recommends verifying pacemaker operation in the packaging prior to the implant procedure. Devices exhibiting intermittent or permanent loss or output or telemetry should not be implanted.

> Physicians should consider both the very low occurrence rate and that no failures have been observed after successful confirmation of pacing at implant, in addition to the unique needs of individual patients, in their medical decisions regarding patient management.

(Williams Aff. at Ex. C.)

Approximately two months later, on December 12, 2005, Guidant issued an "Advisory Update" that addressed the September 22, 2005 recall letter. There, Guidant explained the following:

> In March of 2004, Guidant discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 1."
>
> Guidant has recently discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 2." While Guidant recommends normal monitoring for patients implanted with these devices, Guidant representatives will retrieve and replace remaining hospital inventory with product free from susceptibility to "Mode 2" peri-implant failure.
>
> INSIGNIA and NEXUS devices currently being distributed by Guidant are not subject to either failure mode and therefore are not included in either recall.

(Williams Aff. at Ex. D.) Although Alexander's Model 1291 device was manufactured in December 2005, it is unclear whether the device was manufactured and shipped prior to this December 12, 2005 Advisory Update.

Approximately one month after Alexander's implant surgery, on June 23, 2006, Guidant issued a separate recall of the Model 1291. Thereafter, on July 7, 2006, Alexander received notice from the St. Louis Metro Heart Group that the specific Guidant pacemaker that was implanted in him had been recalled in connection with defective product concerns.

On July 25, 2006, Alexander filed this case against Defendants Boston Scientific Corporation ("BSC"), Guidant Subsidiary of Boston Scientific Corporation ("Guidant"), and St. Anthony's in the Circuit Court of St. Louis County, Missouri. It is undisputed that Alexander and St. Anthony's are both Missouri residents. Guidant is a citizen of Indiana and BSC is a citizen of Delaware and Massachusetts.

Alexander alleges that BSC and Guidant are liable for manufacturing and design defects and for the failure to warn patients of the alleged health risks and/or defects associated with certain Guidant implantable cardiac medical devices. Alexander alleges that St. Anthony's committed medical negligence because it knew or had reason to know that Alexander's Guidant device was potentially defective and because it did not advise Alexander or put Alexander on notice of these facts prior to implantation.

More specifically, Alexander alleges that:

> [p]rior to the actual implant surgery, both Guidant Corporation's said and physically present employee/agent and St. Anthony's Medical Center nursing staff or a designated St. Anthony's Medical Center employee/agent had the duty to disclose to Plaintiff that the Guidant pacemaker to be implanted in Plaintiff's chest is potentially defective and that a recall had been issued for Guidant pacemakers, model 1291 in September 2005 and that there existed a known manufacturing/assembly defect such that some unspecified percentage of Guidant pacemakers, model 1291, are known to be dangerously defective.
>
> 4. Both Guidant Corporation's said employee/agent and St. Anthony's Medical Center's staff employees attending to Plaintiff on May 25, 2006 breached the duty to disclose to Plaintiff that some unspecified percentage of Guidant pacemakers, model 1291, are know[n] to be dangerously defective, that several persons have died in connection with Guidant pacemakers, and that hundreds of product liability law suits are pending against Guidant Corporation.

(Williams Aff., Ex. B at 3-4.)

On August 25, 2006, BSC and Guidant removed the case to the United States District Court for the Eastern District of Missouri, Eastern Division, asserting that complete diversity exists because Alexander improperly joined St. Anthony's to defeat diversity jurisdiction. BSC and Guidant then filed a motion to stay all proceedings pending transfer of Alexander's case to the District of Minnesota as part of MDL No. 1708. The United States District Court for the Eastern District of Missouri granted the motion to stay and on February 7, 2007, the case was formally transferred to the District of Minnesota as part of MDL No. 1708.

On February 20, 2007, Alexander filed a Motion to Remand to St. Louis County Circuit Court, claiming that St. Anthony's is a proper defendant in the case and therefore complete diversity is lacking. On March 9, 2007, St. Anthony's filed a Motion to Dismiss, claiming that Alexander has failed to state a claim against St. Anthony's.

## I. Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[1]

---

[1] Section 1441(a) provides in pertinent part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Alexander essentially argues that BCS and Guidant had no right to remove under 28 U.S.C. § 1441(a) because there is incomplete diversity of citizenship because St. Anthony's is a Missouri resident. Alexander therefore argues that because there is no original jurisdiction, under 28 U.S.C. § 1447(c) the case must be remanded.

Here, because St. Anthony's is a Missouri resident, the action on its face is not removable. Defendants assert, however, that removal was proper because Alexander fraudulently joined St. Anthony's to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success. *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993); *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809-10 (8th Cir. 2003) (stating that the Court must "determine whether there is a reasonable basis

for predicting that the state's law might impose liability against the defendant"); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant."); *Anderson*, 724 F.2d at 84 ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."). The burden is on the defendants to establish that a party has been fraudulently joined. *Schwenn*, 822 F. Supp. at 1455.

Guidant and BSC contend that the Court should find fraudulent joinder because Alexander failed to plead a cause of action against St. Anthony's. St. Anthony's similarly asserts that complete diversity exists because Alexander failed to state a claim against St. Anthony's. Specifically, Defendants assert that Alexander failed to plead any facts showing that St. Anthony's received the September 22, 2005 recall letter, and even if St. Anthony's did receive the letter, the letter did not instruct physicians to cease implantation of Model 1291 devices or ask for their return. In addition, Defendants assert that the December 12, 2005 Advisory Update states that the devices distributed after the recall letter were not subject to the recall, and therefore the device implanted in Alexander, which was manufactured in December 2005, was not subject to a recall on the date it was implanted.[2]

---

2 The Court notes that the December 12, 2005 Advisory Update actually states that "Guidant *has recently discontinued* shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to 'Failure Mode 2,'" and that "INSIGNIA and NEXUS devices *currently being distributed by Guidant* are not subject to either failure mode and therefore are not included in either recall." (Williams Aff. at Ex. D (emphasis added).)

(Footnote Continued on Next Page)

St. Anthony also asserts that it does not owe a duty to patients to report that the manufacturer of certain devices used in its facilities is a party to litigation regarding products that are not being used with that particular patient. And, St. Anthony asserts that because Alexander has not plead any facts demonstrating that anyone at St. Anthony's assumed a duty to inform him of risks associated with his device, contending that Missouri law requires such assumption, Alexander has failed to state a claim against St. Anthony's.[3]

Alexander, on the other hand, asserts that he has a cause of action against St. Anthony's based on his allegations that St. Anthony's knew that model 1291 pacemakers were known to be dangerously defective by May 25, 2006, and knew that Guidant had recalled model 1291 pacemakers eleven months prior to his implantation yet continued to market the units. Alexander asserts that despite this knowledge, St. Anthony's—acting through its employees/agents—selected a model 1291 Guidant pacemaker to be implanted into Alexander. Alexander alleges that, prior to his implantation, St. Anthony's concealed all of this information from him.

---

(Footnote Continued From Previous Page)
This does not necessarily indicate that the devices distributed after the September 22, 2005 letter were not subject to the recall, as the Advisory Update does not give specific dates as to when those specific devices were discontinued and as to when distribution stopped.

3 BSC and Guidant also assert that to the extent Alexander's claim against St. Anthony's was a strict liability claim, the claim is foreclosed under Missouri law. Because Alexander concedes that his claim is not a strict liability claim, the Court does not address the issue here.

Alexander asserts that his allegations are supported by the fact that Guidant issued a recall regarding the model 1291 pacemakers on September 22, 2005, Guidant issued a separate recall regarding the model 1291 pacemakers within thirty days of his implantation, and as of the date of his implantation, hundreds of product liability lawsuits involving Guidant pacemakers were pending in state and federal courts. In addition, Alexander asserts that because "[St. Anthony's] is in the business of implanting pacemakers and defibrillators and routinely does business with manufacturers and distributors of implantable cardiac devices," St. Anthony's "would certainly know the quality history and dependability rating of manufacturers selected by [St. Anthony's] to supply pacemakers for implantation by [St. Anthony's]." (Pl.'s Resp. in Opp'n to Def. St. Anthony's Medical Center's Mot. to Dismiss and to Def.'s Opp'n to Pl.'s Mot. to Remand to St. Louis County Circuit Court at 2.)

The Court acknowledges that Alexander is proceeding *pro se*. *Pro se* pleadings are liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers). Although BSC and Guidant contend that St. Anthony's failure to warn claims are without factual basis because it was "factually impossible" for St. Anthony's to have disclosed to Alexander that his device was potentially defective, the Court finds that, at this juncture, fact issues preclude the Court from finding that there is no basis for liability.

"[C]ontested issues of fact should be resolved in favor of the plaintiff." *Schwenn*, 822 F. Supp. at 1455. Alexander alleges in his Complaint, among other things, that "the medical center does business with Guidant Corporation on a regular basis and routinely invites Guidant Corporation employees/agents into its operating rooms during the implanting of Guidant pacemakers for programming purposes." (Williams Aff., Ex. B at 4-5.) At a minimum, Alexander has raised an issue as to whether St. Anthony's knew or had reason to know that Alexander's device was recalled and/or potentially defective in light of the publicity Guidant had received prior to Alexander's implantation regarding potentially defective devices.

"Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn*, 822 F. Supp. at 1455. Here, Alexander's pleadings do allege facts, which if true, have a chance of success. At a minimum, in light of the liberal pleading requirements, the Court cannot conclude that no valid claims are brought against St. Anthony's as a matter of well-settled law. In addition, there is no evidence that St. Anthony's was singled out to avoid federal diversity jurisdiction rather than to obtain full relief. Accordingly, Alexander's joinder of St. Anthony's cannot be deemed fraudulent. Therefore, the Court concludes that because St. Anthony's was joined as a defendant, it lacks subject matter jurisdiction over this action as it currently stands.

**Sever and Remand**

To the extent the Court does find that St. Anthony's was not fraudulently joined, which the Court does find, BSC and Guidant alternatively request the Court to sever and remand Alexander's claims against St. Anthony's to state court and retain jurisdiction over Alexander's claims against BSC and Guidant. Specifically, BSC and Guidant assert that Alexander had fraudulently misjoined St. Anthony as a party, and therefore the claims against St. Anthony should be severed from the claims asserted against BSC and Guidant. BSC and Guidant contend that the claims arising out of St. Anthony's treatment do not arise out of the same transaction or occurrence as the claims against BSC and Guidant because the claims against St. Anthony's are based on medical negligence while the claims against BSC and Guidant are based on product liability. Alexander contends that his claims against St. Anthony's are not negated simply because his claims against BSC and Guidant are based on product liability. Alexander asserts that the Defendants' actions/inactions do arise out of the same transaction or occurrence.

The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[4] If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that St. Anthony's has been improperly joined in this case. The joinder of the malpractice claim against St. Anthony's with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either BSC/Guidant or St. Anthony's would not be a basis for liability as to the other. However, separate liability as to each could be separately found.

This finding is consistent with how joinder has been interpreted in Missouri. The Missouri Supreme Court, for example, has rejected the propriety of joining defendants involved in successive accidents. *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348 (Mo. 1992) (en banc). There, the plaintiffs alleged they were seriously injured as a result of the successive negligent acts or omissions of the defendants "in combination" and that

---

4 The Missouri rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Mo. R. Civ. P. 52.05.

the two accidents "were not separate and distinct but inseparable and indistinguishable thereby creating common liability among all of the named defendants." *Id.* at 346, 348. The supreme court held that joinder was not permitted under Mo. R. Civ. P. 52.05(a) because the cause of action arising out of the two accidents did not arise out the same transaction or occurrence. Instead, "[e]ach defendant [was] responsible for the injuries caused in the accident in which he or she was involved." *Id.* at 348. In light of *Jinkerson*, the Court finds that it likely that the state court would find that Alexander did not have a reasonable basis for joining St. Anthony's under state procedural law and that Alexander should sue St. Anthony's under a separate state action.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)

(emphasis added). However, where a non-diverse party, such as St. Anthony's here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the misjoinder of St. Anthony's would destroy complete diversity, and because the basis for the causes of action against St. Anthony's do not arise from the same transaction and occurrences as those in the causes of action against the other Defendants, the Court will sever the action against St. Anthony's so as to preserve BSC and Guidant's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II. Motion to Dismiss

Because the Court concludes that the action against St. Anthony's shall be severed and remanded from the lawsuit, the Court denies St. Anthony's Motion to Dismiss as moot.

**IT IS HEREBY ORDERED** that:

1. Plaintiff Alexander's Motion for Remand to St. Louis County Circuit Court (MDL No. 05-1708 (DWF/AJB), Doc. No. 1258; Civil No. 07-1129 (DWF/AJB), Doc. No. 3) is **GRANTED** as to Defendant St. Anthony's Medical Center but **DENIED** as to all remaining Defendants. The Court Orders that all claims against Defendant St. Anthony's Medical Center are **SEVERED** and **REMANDED** to St. Louis County Circuit Court.

2. Defendant St. Anthony's Motion to Dismiss (MDL No. 05-1708 (DWF/AJB), Doc. No. 1308; Civil No. 07-1129 (DWF/AJB), Doc. No. 9) is **DENIED AS MOOT WITHOUT PREJUDICE.**

Dated: June 4, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

**PROOF OF SERVICE**
(C.C.P. §§ 1013, 1013a, 2015.5)

**Case Name:** **Leonard Ralston et al. vs. Davol Inc., C.R. Bard, Inc. et al.**

**Court:** **San Joaquin County Superior Court Case No.**

**Case no.:** **39-2008-00185831-CU-PL-STK**

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111-3941.

3. On **July 10, 2008**, I served the following documents:

**NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

4. I served the documents on the **persons** below as follows:

Victor F. Stefan, Esq.
The Boccardo Law Firm LLP
111 West St. John Street
Suite 400
San Jose, CA 95113
(408) 298-5678 (Phone)

5. The documents were served by the following means (specify):

____ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening. The time of service was _________.

**X** **By United States mail.** I enclosed the documents in a sealed envelope or Package addressed to the persons at the addresses in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

____ **By overnight delivery.** I enclosed the documents in an envelope or Package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

____ **By messenger service**. I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

____ **By fax transmission.** I faxed the documents to the person at the fax numbers listed in item 4. No error was reported by the fax machine that I used. .

____ **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **July 10, 2008**

Esther Hom